# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| AGATHA LEWANDOWSKA GIANNESE; and ANDREA FAHEY, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | (JURY TRIAL DEMANDED) |
| EDGEWELL PERSONAL CARE BRANDS, LLC, | |
| Defendant. | |

Agatha Lewandowska Giannese ("Plaintiff Lewandowska Giannese") and Andrea Fahey ("Plaintiff Fahey") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations pertaining specifically to themselves or their counsel, which are based on personal knowledge.

## <u>NATURE OF THE CASE</u>

1. Plaintiffs bring this action against Defendant Edgewell Personal Care Brands LLC to redress and put a stop to the false, deceptive, and unlawful manner in which Defendant has labeled, distributed, advertised, promoted, and marketed its sunscreen product "Hawaiian Tropic Everyday Active SPF 50 Sport Sunscreen Lotion" (the "Product"). On the Product's labeling, and in advertising and promotional materials for the Product, Defendant represents that the Product provides a sun protection factor ("SPF") that is far higher than the SPF that the Product actually provides, thereby deceiving consumers into believing that the Product offers better protection against sunburns and other dangerous effects of

exposure to ultraviolet radiation (such as skin cancer and premature aging) than it actually provides, and that the Product is thus worth purchasing at a price higher than what is charged for other lower-SPF sunscreens.

2. Plaintiffs and members of the putative Classes (defined below) purchased the Product based on Defendant's representations that the Product provides SPF 50 protection. Unbeknownst to them, however, the Product actually provides only SPF 20 protection—less than half of the protection Defendant represents—as independent laboratory testing commissioned by Plaintiffs' counsel has revealed. At SPF 20, the Product provides far less protection from the sun's harmful rays—and is of significantly lower quality and worth far less money—than a sunscreen that actually provides SPF 50 protection.

3. Defendant has labeled, distributed, advertised, promoted, and marketed the Product as providing greater protection against the sun's harmful rays than it actually provides in order to capitalize on consumer demand for high-SPF sunscreens, such as SPF 50 sunscreens. By promising SPF 50 protection, the Product sells at premium prices and, in turn, generates more revenue and profit for Defendant than its lower-SPF sunscreen counterparts.

4. By falsely representing the SPF protection provided by the Product, Defendant has knowingly misled and continues to knowingly mislead consumers into believing that they are purchasing a sunscreen with better quality, filtration, absorption, and reflection capabilities against ultraviolet radiation than the lower-SPF product that they actually receive, thereby deceiving them into paying a premium price for a non-premium product.

5. Defendant's practices of falsely, deceptively, and misleadingly representing that the Product provides SPF protection of 50 (including on the Product's labeling and in advertising and promotional materials) induced Plaintiffs and numerous other consumers into either purchasing a product they otherwise

would not have purchased at all, or paying significantly more for a product than they would have paid had it been labeled, distributed, advertised and promoted with accurate SPF representations.

6.    Accordingly, Plaintiffs bring this class action complaint against Defendant to redress and put a stop to its practices of falsely, deceptively, and unlawfully misrepresenting the SPF protection provided by the Product—conduct that has caused and continues to cause significant harm to consumers nationwide, including in Florida and Illinois. Plaintiffs seek actual damages, restitution, injunctive relief, and other legal and equitable remedies on behalf of themselves and others similarly situated.

## JURISDICTION AND VENUE

7.    The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because (i) there are 100 or more members of each of the putative Classes, (ii) the aggregate amount in controversy as to each of the putative Classes exceeds $5,000,000, exclusive of interest and costs, and (iii) at least one member of each of the Classes is a citizen of a state different from Defendant.

8.    Personal jurisdiction and venue are proper because Defendant maintains its headquarters and principal place of business in Shelton, Connecticut, within this judicial District.

## PARTIES

9.    Plaintiff Lewandowska Giannese is, and at all times relevant hereto was, a citizen and resident of Cook County, Illinois.  On or about July 28, 2023, from her home in Illinois, Plaintiff Lewandowska Giannese purchased the Product (Hawaiian Tropic Everyday Active SPF 50 Sport Sunscreen Lotion), bearing universal product code ("UPC") 075486091170 and expiration date 03/2026 and containing four active ingredients (Avobenzone 2.7%, Homosalate 9.0%, Octisalate

4.0%, and Octocrylene 5.0%), for $10.97 plus tax from Amazon's online website, www.amazon.com.

10.    Plaintiff Fahey is, and at all times relevant hereto was, a citizen and resident of Indian River County, Florida.  On or about May 2, 2025, Plaintiff Fahey purchased the Product (Hawaiian Tropic Everyday Active SPF 50 Sport Sunscreen Lotion), bearing UPC 075486091170 and expiration date 10/2027 and containing four active ingredients (Avobenzone 2.7%, Homosolate 9.0%, Octisalate 4.0%, and Octocrylene 5.0%), in a purchase totaling $51.57 plus tax at a Publix grocery store in Florida.

11.    Defendant Edgewell Personal Care Brands LLC is a Delaware limited liability company that maintains its corporate headquarters and principal place of business in Shelton, Connecticut. Defendant produces, manufactures and labels the Product, and distributes, advertises, promotes, and markets the Product throughout the United States, including in Florida and Illinois.  Defendant's products, including the Product at issue in this case, are sold through various online e-commerce platforms and at physical retail locations nationwide, including throughout Florida and Illinois.

## FACTUAL ALLEGATIONS

### I.    Consumers Perceive High-SPF Sunscreens as Providing Greater Protection from the Sun and Justifying Higher Purchase Prices than Their Lower-SPF Sunscreen Counterparts

12.    Sunscreens, topically applied products that protect against sunburns and other effects of exposure to ultraviolet radiation (such as skin cancer and premature aging), are sold by numerous companies in varying SPF values, which these companies prominently represent on the products' labels and in advertisements and other promotional materials for the products.

13.    SPF is a standardized rating system that measures the fraction of sunburn-producing ultraviolet rays capable of reaching the skin.  The SPF value of a sunscreen product informs consumers of the level of sunburn protection provided by the sunscreen by indicating the approximate measure of time that a person who has applied the sunscreen can stay in the sun without getting burned.  As an example, a product represented as providing SPF 50 protection should permit a person to stay in the sun 50 times longer without burning than if that person were wearing no protection at all.  Thus, a product with a higher SPF is better able to prevent sunburn by more effectively filtering, absorbing, reflecting, and/or scattering more ultraviolet radiation than products of a lower SPF.

14.    Academics,[1] legislators,[2] and medical organizations[3] alike have emphasized the importance of sunscreen in protecting against the damaging effects of ultraviolet radiation and the importance of appropriately disclosing the SPF capabilities of sunscreen products.

15.    Consumers are familiar with SPF because SPF values have appeared on sunscreens for decades.  Reasonable consumers have learned to correctly understand

---

[1]    *See* Charles P. Tribby et al., *Perceived Usefulness and Recall of Sunscreen Label Information by Consumers*, 157 JAMA DERMATOLOGY 573 (2021).

[2]    *See* Press Release, *Senator Chuck Schumer: New Report Shows Nearly Half of All Sunscreens Make False Claims About SPF Protection* (July 20, 2016), https://www.schumer.senate.gov/newsroom/press-releases/schumer-new-report-shows-nearly-half-of-all-sunscreens-make-false-claims-about-spf-protection-senator-pushes-fda-to-test-sunscreens-confirm-true-spf-numbers-and-crackdown-on-labels-that-promise-protection-but-instead-leave-consumers-burned.

[3]    S. Kim et al., *Prevalence and Correlates of Sun Protections with Sunburn and Vitamin D Deficiency in Sun-Sensitive Individuals*, 34 J. EUR. ACAD. DERMATOL. VENEREOL. 2664 (2020); AM. ACAD. DERMATOLOGY ASS'N, *How to Select Sunscreen*, https://www.aad.org/public/everyday-care/sun-protection/shade-clothing-sunscreen/how-to-select-sunscreen (last visited Oct. 6, 2025).

that higher-SPF sunscreens provide greater protection against the sun's harmful rays than lower-SPF sunscreens.  Accordingly, reasonable consumers expect that if they purchase and use a sunscreen labeled SPF 50, for instance, that they will be far better protected against sunburn and cancer-causing ultraviolet rays than if they had purchased and used a sunscreen labeled as, for instance, SPF 30.

16.    Consumers thus rely on representations of the SPF values of sunscreens as they compare, assess, and make decisions on which sunscreen products to purchase.

## II.    Defendant's Product

17.    The Product in question here, "Hawaiian Tropic Everyday Active SPF 50 Sport Sunscreen Lotion," is produced, manufactured, labeled, distributed, advertised, promoted, and marketed by Defendant.

18.    Defendant has entered licensing agreements for the Product to be sold at numerous e-commerce platforms and physical retail stores across the United States, including but not limited to on the websites of and at retail stores operated by CVS, Amazon, Ulta Beauty, and Target, among many others.

19.    Regardless where the Product is sold, the Product comes in the same bottle and contains the same uniform labeling, which expressly states (in large letters on the front of the bottle) that the Product provides SPF "50" protection, as shown below:



20.    Some online locations where the Product is sold, including Amazon, track the number of sales made for the Product. As shown below, the Product has been purchased over 2,000 times in the last month alone from Amazon:[4]

---

[4]    The Product is offered for purchase at the following Amazon webpage: https://www.amazon.com/dp/B01MY051NZ.



### III. Defendant Falsely, Deceptively, and Misleadingly Represents that the Product Provides SPF 50 Protection

21.     Defendant's claim that the Product provides SPF 50 protection is false, deceptive, and misleading.

22.     This is because the SPF protection provided by the Product is not even close to 50.  In reality, the SPF protection provided by the Product is 20.

23.     On or about February 21, 2025, Plaintiffs' counsel purchased the Product, bearing UPC 075486091170 and expiration date 08/2027 and containing four active ingredients (Avobenzone 2.7%, Homosalate 9.0%, Octisalate 4.0%, and Octocrylene 5.0%), for $14.99 plus tax at a CVS retail store in Miami, Florida.

24.     Plaintiffs' counsel then submitted the purchased Product to a reputable and qualified laboratory for testing.  The lab tested the Product by performing a clinical evaluation of static sunscreen efficacy with the sun protection factor (SPF) assay and calculation of the label SPF, following the FDA testing methods embodied in FDA Final Rule, Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use,  76 Fed. Reg. 35620 (June 17, 2011), and FDA,

Final Administrative        Order (OTCOOOOO6);  Over-the-Counter  Monograph
MO20: Sunscreen Drug Products for Over-the-Counter Human Use (Sept. 24, 2021).
Testing began on May 29, 2025 and concluded on July 16, 2025.

25.    The results of the testing commissioned by Plaintiffs' counsel reveal
that the Product does not provide SPF 50 protection, but rather provides SPF 20
protection. *See* **Exhibit A** ("Final Report" of the Product (referred to therein as
"Product C") by Consumer Product Testing Company, dated July 31, 2025).  The
lab's test results were derived from the testing methods embodied in the FDA Final
Rule and FDA Final Administrative Order referenced above.  *See id.*

26.    SPF protection of 20, the actual SPF protection provided by the Product
as revealed by the testing commissioned by Plaintiffs' counsel, offers significantly
less protection than SPF 50, which Defendant has falsely represented the Product to
consumers as providing. SPF 20 protection affords users a significantly shorter
period of exposure to ultraviolet radiation without damage when compared to the
period of exposure to ultraviolet radiation without damage that SPF 50 protection
affords.

27.    The Product that Plaintiffs purchased, like the Product purchased by
each member of the Classes during the time period relevant to this action, came in
the same bottle and with same labeling as the Product sent for testing by Plaintiffs'
counsel, contained the same percentage of active ingredients as the Product sent for
testing by Plaintiffs' counsel, and was produced and manufactured in the same
manner pursuant to the same procedures as the Product sent for testing by Plaintiffs'
counsel.  Moreover, during the time period relevant to this action, there were no
reported recalls, production or manufacturing issues, or other events with respect to
the Product to suggest that any bottles of the Product sold to consumers might
contain sunscreen that was produced or manufactured in a different manner or
pursuant to different procedures, or with different percentages of active ingredients,

than any other bottles of the Product.  Accordingly, all bottles of the Product that were purchased by consumers during the time period relevant to this action contain sunscreen that was produced and manufactured in the same manner pursuant to the same procedures, that is comprised of the same or materially the same percentages of the active ingredients, and that provides the same or materially the same SPF protection (all significantly less than SPF 50).

28.    Defendant, as the producer, manufacturer, distributor, and labeler of the Product, and the employer of a dedicated team of product testing professionals, has been aware or should have been aware, since the Product's inception and throughout the time period relevant to this action, that the true SPF protection provided by the Product is significantly lower than 50.

29.    Moreover, based on the Product's chemical formula and active ingredients alone, Defendant either knew or should have known that the true SPF protection provided by the Product is significantly lower than SPF 50.

30.    Additionally, Defendant was required to perform and did perform testing on the Product, including concerning the protection against ultraviolet radiation provided by the Product, prior to the Product being labeled, advertised, promoted, marketed, distributed, and offered for sale to consumers.[5] Such testing either made or should have made Defendant aware that the true SPF protection provided by the Product is significantly lower than SPF 50.

---

[5]    *See, e.g.,* Edgewell, *Edgewell Product Safety Principles*, available at https://cdn.shopify.com/s/files/1/0598/9538/2192/files/Edgewell-Product-Safety-Principles.pdf?v=1657287543 (last visited Sept. 26, 2025) (explaining that Edgewell employs "highly skilled and board-certified toxicologists thoroughly evaluate products before they reach the market to ensure they are safe for consumers to use. Evaluation includes ingredient review, safety testing, and finished product assessment.").

31.    Plaintiffs are just two among numerous consumers nationwide who have been deceived by Defendant's false and misleading representations of the SPF protection provided by the Product, as the following examples of publicly available "reviews"[6] of the Product reflect:





32.    At all times relevant hereto, Defendant either knew or should have known that its representations that the Product provides SPF protection of 50 were untrue, false and/or misleading, and made these representations knowing that consumers would rely upon the Product's represented SPF value of 50 in deciding to purchase the Product and in using the Product while exposed to the sun's harmful ultraviolet radiation.

33.    Defendant's misrepresentations of the SPF protection provided by the Product, on the labeling of the Product and in advertising and promotional materials for the Product, were made for the purpose of inducing—and did in fact induce—consumers (including Plaintiffs and members of the Classes) to purchase the Product at a premium price, based on their reasonable but mistaken beliefs that the Product provides greater protection against the sun's harmful rays than its lower-SPF sunscreen counterparts.

---

[6]    These reviews are accessible at the following webpage: https://www.amazon.com/product-reviews/B01MY051NZ/.

## IV.    Plaintiffs' Experiences

### A. Plaintiff Lewandowska Giannese

34.    Plaintiff Lewandowska Giannese purchased the Product on or about July 28, 2023 in Illinois.

35.    SPF was the most important consideration in Plaintiff Lewandowska Giannese's decision to purchase the Product because she values the filtration, absorption, and reflection capabilities against UV rays provided by high SPF sunscreens, such as those of SPF 50 protection.

36.    Prior to purchasing the Product, Plaintiff Lewandowska Giannese saw—and in making her decision to purchase, she relied on—Defendant's representations on the label of the Product that the Product provided "SPF 50" protection.

37.    Prior to purchasing the Product, Plaintiff Lewandowska Giannese necessarily and justifiably relied upon the written statements on the Product, including those pertaining to its SPF, as accurate.  Plaintiff Lewandowska Giannese had no realistic way to review or independently assess Defendant's proprietary knowledge concerning the Product's chemical formula or the Product's true SPF performance prior to purchasing the Product.  At the time she purchased the Product, Plaintiff Lewandowska Giannese had no reason to suspect or know that the Product provided significantly less SPF protection than the value of 50 that Defendant had represented on the Product and had advertised, promoted, and marketed the Product as providing.

38.    Based on Defendant's representations on the Product's labeling, Plaintiff Lewandowska Giannese reasonably expected the Product she purchased would provide SPF 50 protection in terms of its filtration, absorption, and reflection of ultraviolet radiation.

39.    After purchasing the Product, Plaintiff Lewandowska Giannese immediately started using the Product.  The Product was not as advertised, and Plaintiff Lewandowska Giannese found the Product to be neither of the quality, absorption, nor filtration she expected (nor that any reasonable consumer would expect) from a sunscreen providing SPF 50 protection.  As a result, Plaintiff Lewandowska Giannese later discontinued her use of the Product.

40.    As the direct and proximate result of Defendant's false, deceptive, and misleading statements and omissions concerning the Product, as alleged herein, Plaintiff Lewandowska Giannese suffered economic injury by paying a premium for an inferior quality good and by being deprived of the full intended use of the Product and the full benefit of the bargain promised by Defendant.

### B. Plaintiff Fahey

41.    Plaintiff Fahey purchased the Product on or about May 2, 2025 in Florida.

42.    SPF was the most important consideration in Plaintiff Fahey's decision to purchase the Product because she values the filtration, absorption, and reflection capabilities against UV rays provided by high SPF sunscreens, such as those of SPF 50 protection.

43.    Prior to purchasing the Product, Plaintiff Fahey saw—and in making her decision to purchase, she relied on—Defendant's representations on the label of the Product that the Product provided "SPF 50" protection.

44.    Prior to purchasing the Product, Plaintiff Fahey necessarily and justifiably relied upon the written statements on the Product, including those pertaining to its SPF, as accurate.  Plaintiff Fahey had no realistic way to review or independently assess Defendant's proprietary knowledge concerning the Product's chemical formula or the Product's true SPF performance prior to purchasing the Product.  At the time she purchased the Product, Plaintiff Fahey had no reason to

suspect or know that the Product provided significantly less SPF protection than the value of 50 that Defendant had represented on the Product and had advertised, promoted, and marketed the Product as providing.

45.    Based on Defendant's representations on the Product's labeling, Plaintiff Fahey reasonably expected the Product she purchased would provide SPF 50 protection in terms of its filtration, absorption, and reflection of ultraviolet radiation.

46.    After purchasing the Product, Plaintiff Fahey immediately started using the Product.  The Product was not as advertised, and Plaintiff Fahey found the Product to be neither of the quality, absorption, nor filtration she expected (nor that any reasonable consumer would expect) from a sunscreen providing SPF 50 protection.  As a result, Plaintiff Fahey later discontinued her use of the Product.

47.    As the direct and proximate result of Defendant's false, deceptive, and misleading statements and omissions concerning the Product, as alleged herein, Plaintiff Fahey suffered economic injury by paying a premium for an inferior quality good and by being deprived of the full intended use of the Product and the full benefit of the bargain promised by Defendant.

## CLASS ALLEGATIONS

48.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent the following "Nationwide Class":

> All persons who, during the applicable limitation period continuing through the date of an order certifying this class, purchased "Hawaiian Tropic Everyday Active SPF 50 Sport Sunscreen Lotion" in the United States.

49.    Plaintiff Lewandowska Giannese also seeks to represent the following "Illinois Subclass" pursuant to Federal Rule of Civil Procedure 23:

All persons who, during the applicable limitation period continuing through the date of an order certifying this class, purchased "Hawaiian Tropic Everyday Active SPF 50 Sport Sunscreen Lotion" in Illinois.

50.    Plaintiff Fahey also seeks to represent the following "Florida Subclass" pursuant to Federal Rule of Civil Procedure 23:

All persons who, during the applicable limitation period continuing through the date of an order certifying this class, purchased "Hawaiian Tropic Everyday Active SPF 50 Sport Sunscreen Lotion" in Florida.

51.    The "Nationwide Class," the "Florida Subclass," and "Illinois Subclass" are at times referred to herein collectively as the "Classes".

52.    Plaintiffs reserve the right to modify the definitions of the Classes following the commencement of discovery and further investigation.

53.    Excluded from the Classes are Defendant, any parent, subsidiary, or affiliate of Defendant, as well as the officers, directors, agents, servants, or employees of the foregoing.

54.    This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b).  This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

55.    The Classes are so numerous that their individual joinder herein is impracticable.  The number of persons within the Classes is substantial.  Plaintiffs are informed and believe, and thereupon allege, that there are millions of persons who comprise the Nationwide Class, at least several hundred thousand persons who comprise the Florida Subclass, and at least several hundred thousand persons who comprise the Illinois Subclass.  The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Members of the Classes may be notified of the pendency of this action

by mail and/or publication through the purchase records of Defendant and relevant third parties.

56.     Common questions of law and fact exist for all members of the Classes and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to:

(a)     whether Defendant's representations that the Product provided SPF protection of 50 were false, deceptive, and/or misleading;

(b)     whether Defendant knew or should have known that its misrepresentations, as alleged herein, were false or misleading to consumers;

(c)     whether reasonable consumers would rely on Defendant's misrepresentations concerning the Product's SPF, as alleged herein,  to believe the Product provided the advertised level of protection from the sun's harmful radiation;

(d)     whether Defendant received and retained profits attributable to sales of the Product in Connecticut;

(e)     whether Defendant's conduct, as alleged herein, violated the statutes and laws at issue; and

(f)     The damages to which Plaintiffs and the members of the Classes are entitled to redress Defendant's unlawful conduct, as alleged herein.

57.     The named Plaintiffs' claims are typical of the claims of unnamed members of the Classes in that the named Plaintiffs and all members of the Classes suffered similar injuries as a result of the same uniform conduct and practices by Defendant, as alleged herein.

58.     Plaintiffs are adequate representatives of the Classes they seek to represent because their interests are aligned, and do not conflict, with the interests of the unnamed members of the Classes, they have retained competent counsel experienced in prosecuting consumer class actions, and they intend to prosecute this

action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Classes.

59.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. The individual interest of each member of the Classes in controlling the prosecution of separate claims is small because the damages at stake for these claims on an individual basis are small. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which such individualized litigation would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action.

<u>**CLAIMS FOR RELIEF**</u>

**FIRST CLAIM FOR RELIEF**
**Unjust Enrichment**
(By Plaintiffs, Individually and on Behalf of the
Nationwide Class, Against Defendant)

60.    Plaintiffs repeat and incorporate paragraphs 1-59 above as though fully set forth herein.

61.    Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class against Defendant under Connecticut common law.

62.     Plaintiffs and the Nationwide Class Members have conferred substantial benefits on Defendant by purchasing the Product, including the monetary profits that Defendant received attributable to sales of the Product to Plaintiffs and members of the Nationwide Class.

63.     Defendant received and retained, at its corporate headquarters in Connecticut, the monetary revenue and profits that it received attributable to sales of the Product to Plaintiffs and members of the Nationwide Class. Defendant appreciates or has knowledge of such benefits.

64.     Defendant has knowingly and willingly accepted and enjoyed these benefits in Connecticut.

65.     Defendant either knew or should have known that the payments rendered by Plaintiffs and the Nationwide Class members were given and received with the expectation that the Product would be as represented and warranted.  For Defendant to receive and retain, in Connecticut, the benefit of Plaintiffs' and Nationwide Class members' payments under these circumstances is inequitable.

66.     As a result of Defendant's misrepresentations that the Product provides SPF protection of 50—made on the labeling of the Product and in advertising and promotional materials for the Product, from Defendant's headquarters in Connecticut—Defendant wrongfully received and retained, in Connecticut, monetary revenue and profits attributable to sales of the Product.

67.     As described above, had Plaintiffs been aware of the actual SPF protection provided by the Product, they would not have paid as much as they did for the Product or would not have purchased the Product at all.

68.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and the other Nationwide Class members have suffered actual damages, in the form of the monetary revenue and profit received and retained by Defendant in Connecticut attributable to the money that Plaintiffs and members of the Classes

paid to purchase a product labeled as "SPF 50" but which actually provided only SPF 20 protection.

69.    Equity demands disgorgement of Defendant's ill-begotten gains. Defendant will be unjustly enriched unless it is ordered to disgorge those profits for the benefit of Plaintiffs and Nationwide Class members.

70.    Plaintiffs and the Nationwide Class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

**SECOND CLAIM FOR RELIEF**
**Unfair and Deceptive Practices in Violation of 815 ILCS 505/1**
(By Plaintiff Lewandowska Giannese, Individually and on Behalf of the
Illinois Subclass, Against Defendant)

71.    Plaintiff Lewandowska Giannese repeats and incorporates paragraphs 1-59 above as though fully set forth herein.

72.    Plaintiff Lewandowska Giannese brings this claim individually and on behalf of the members of the Illinois Subclass against Defendant.

73.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), is designed to "protect consumers". . . "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." 815 ILCS 505/1.  The ICFA declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact … in the conduct of any trade or commerce."  *See* 815 ILCS 505/2.

74.    Plaintiff Lewandowska Giannese and the members of the Illinois Subclass purchased the Product in Illinois and are thus "consumers" within the meaning of 815 ILCS 505/1(e).

75.    Defendant is engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

76.    Defendant's acts and practices, as alleged herein, were unfair, unconscionable, and deceptive under ICFA.

77.    Defendant's conduct, as alleged herein, was "unfair or deceptive" because, as alleged herein, Defendant produced, manufactured, labeled, distributed, advertised, promoted, and marketed the Product to consumers throughout Illinois as providing materially greater protection against the sun's harmful rays than it actually provides.  In so doing, Defendant intentionally mislabeled and misbranded the Product, deceptively and falsely advertised the Product, misrepresented and omitted material facts regarding the Product, and otherwise engaged in activities that were substantially injurious to consumers in Illinois.

78.    Defendant intended that consumers, like Plaintiff Lewandowska Giannese and members of the Illinois Subclass, rely upon its false, misleading, and deceptive representations that the Product provides SPF protection of 50, as stated on the labels of the Product and in advertising and promotional materials for the Product.

79.    Defendant's misrepresentations that the Product provides SPF protection of 50 deceived and induced reasonable consumers and the public in Illinois, including Plaintiff Lewandowska Giannese and the Illinois Subclass members, into believing the Product has greater filtration, absorption, and reflection capabilities against ultraviolet radiation than other alternative products that provide less than SPF 50 protection, causing them to reasonably and justifiably rely on such misrepresentations in deciding to purchase the Product.

- 20 -

80.    Defendant's conduct, as alleged herein, has been and continues to be substantially injurious to consumers in Illinois.

81.    No benefit to consumers or competition results from the unfair and deceptive conduct alleged herein. Since consumers reasonably rely on Defendant's representations that the Product provides SPF 50 protection, consumers could not have reasonably avoided such injury.

82.    Plaintiff Lewandowska Giannese and the members of the Illinois Subclass purchased the Product without knowledge that Defendant's representations that the Product provides "SPF 50" protection were false.

83.    Plaintiff Lewandowska Giannese and the members of the Illinois Subclass either would not have purchased the Product at all or would not have paid nearly as much money for the Product had it been labeled, marketed, and advertised with accurate, truthful representations concerning the SPF protection that it provides.

84.    By committing the acts alleged herein, Defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of the ICFA.

85.    As a direct and proximate result of Defendant's conduct, Plaintiff Lewandowska Giannese and the members of the Illinois Subclass have suffered and continue to suffer damages, including economic damages, in terms of the full amount of money they paid for the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

86.    Pursuant to 815 ILCS 505/10a, Plaintiff Lewandowska Giannese and the members of the Illinois Subclass seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement, economic damages, punitive damages, and attorneys' fees and costs.

87.    In accordance with 815 ILCS 505/10a, Plaintiff Lewandowska Giannese, concurrent with the filing of this complaint, has served notice of this complaint on the Illinois Attorney General.

## THIRD CLAIM FOR RELIEF
### Breach of Express Warranty in Violation of 810 ILCS 5/2-313
(By Plaintiff Lewandowska Giannese, Individually and on Behalf of the Illinois Subclass, Against Defendant)

88.    Plaintiff Lewandowska Giannese repeats and incorporates paragraphs 1-59 above as though fully set forth herein.

89.    Plaintiff Lewandowska Giannese brings this claim individually and on behalf of the members of the Illinois Subclass against Defendant under 810 ILCS 5/2-313.

90.    Defendant produced, manufactured, labeled, distributed, advertised, promoted, and marketed the Product in its regular course of business.

91.    Plaintiff Lewandowska Giannese and the Illinois Subclass members purchased the Product in Illinois.

92.    Defendant represented that the Product provides SPF protection of 50 to the consuming public in Illinois on the labeling of the Product and in advertising and promotional materials for the Product.

93.    Defendant intended its SPF 50 representations—which figure prominently on the Product's labeling and in advertising and promotional materials for the Product—to be relied upon by consumers in Illinois like Plaintiff Lewandowska Giannese and Illinois Subclass members in purchasing the Product and ultimately using the Product on themselves and their loved ones.

94.    Plaintiff Lewandowska Giannese reasonably relied on these representations, which formed the basis of his bargain, in purchasing the Product.

95.     Defendant breached the express warranty of the Product it provided to consumers in Illinois because the Product does not provide SPF protection of 50 but rather provides SPF protection far lower than 50.

96.     The SPF protection represented on the labels of the Product was false when the sales of the Product to Plaintiff Lewandowska Giannese and Illinois Subclass members took place, and the falsity of these representations was undiscoverable by Plaintiff Lewandowska Giannese and Illinois Subclass members at the time they made their purchases.

97.     All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff Lewandowska Giannese and the Illinois Subclass members in terms of paying for the goods at issue.

98.     Defendant also had actual or constructive notice of the falsity of the SPF representations on the labeling of the Product based upon the testing Defendant performed on the Product and Defendant's knowledge of the active ingredients and formula of the Product.

99.     Defendant's breach of express warranty has caused Plaintiff Lewandowska Giannese and the Illinois Subclass members to suffer injuries, pay for a falsely labeled Product, and enter into transactions that they either would not have entered into at all or would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff Lewandowska Giannese and the Illinois Subclass members have suffered damages and continue to suffer damages, including economic damages, in terms of the full amount of money they paid for the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

100.    As a result of Defendant's breach of an express warranty, Plaintiff Lewandowska Giannese and the Illinois Subclass members are entitled to legal and

equitable relief, including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

### FOURTH CLAIM FOR RELIEF
### Breach of Implied Warranty in Violation of 810 ILCS 5/2-314 & 5/2-315
(By Plaintiff Lewandowska Giannese, Individually and on Behalf of the Illinois Subclass, Against Defendant)

101.    Plaintiff Lewandowska Giannese repeats and incorporates paragraphs 1-59 above as though fully set forth herein.

102.    Plaintiff Lewandowska Giannese brings this claim individually and on behalf of the members of the Illinois Subclass against Defendant under 810 ILCS 5/2-314 and 5/2-315.

103.    Defendant is a "merchant" with respect to the goods at issue here—the Product, a sunscreen lotion.

104.    By placing the Product into the stream of commerce, Defendant made—and breached—at least two implied warranties.

105.    First, to be merchantable, a product must conform to any written representations on its labels.  Because the true SPF protection provided by the Product does not, in fact, comport with the advertised SPF protection provided by the Product, as alleged herein, Defendant breached an implied warranty of merchantability.

106.    Second, to be merchantable, the Product must be fit for its intended purpose as a consumer sunscreen lotion.  Because consumer sunscreens containing materially less SPF protection than represented are generally considered dangerous and unsuitable, consumer sunscreen represented as providing SPF 50 protection is not fit for its intended purposes if such sunscreen actually provides far less than SPF 50 protection (such as SPF 20 protection in the case of the Product).  Defendant breached an implied warranty of merchantability by producing, manufacturing,

labeling, distributing, advertising, promoting, and marketing a product that it represented as providing SPF 50 protection but, in reality, provides only SPF 20 protection.

107.    Defendant's breaches of these implied warranties have caused Plaintiff Lewandowska Giannese and the Illinois Subclass members to suffer injuries, pay for a falsely labeled Product, and enter into transactions that they either would not have entered into at all or would not have entered into for the consideration paid.  As a direct and proximate result of Defendant's breach, Plaintiff Lewandowska Giannese and the Illinois Subclass members have suffered damages and continue to suffer damages, including economic damages, in terms of the full amount of money they paid for the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

## FIFTH CLAIM FOR RELIEF
### Unfair and Deceptive Practices in Violation of Fla. Stat. § 501.201
(By Plaintiff Fahey, Individually and on Behalf of the
Florida Subclass, Against Defendant)

108.    Plaintiff Fahey repeats and incorporates paragraphs 1-59 above as though fully set forth herein.

109.    Plaintiff Fahey brings this claim individually and on behalf of the members of the Florida Subclass against Defendant under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA").

110.    FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204.

111.    FDUTPA is intended "[t]o protect the consumer public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id.* § 501.202.

112.    Defendant's acts and practices, as alleged herein, were unfair, unconscionable, and deceptive under FDUTPA.

113.    Defendant's conduct, as alleged herein, was "unfair or deceptive" because, as alleged herein, Defendant produced, manufactured, labeled, distributed, advertised, promoted, and marketed the Product to consumers throughout Florida as providing materially greater protection against the sun's harmful rays than it actually provides.    In so doing, Defendant intentionally mislabeled and misbranded the Product, deceptively and falsely advertised the Product, misrepresented and omitted material facts regarding the Product, and otherwise engaged in activities that were substantially injurious to consumers in Florida.

114.    Defendant intended that consumers, like Plaintiff Fahey and the Florida Subclass, rely upon its false, misleading, and deceptive representations that the Product provides SPF protection of 50, as stated on the labels of the Product and in advertising and promotional materials for the Product.

115.    Defendant's misrepresentations that the Product provides SPF protection of 50 deceived and induced reasonable consumers and the public in Florida, including Plaintiff Fahey and the Florida Subclass members, into believing the Product has greater filtration, absorption, and reflection capabilities against ultraviolet radiation than other alternative products providing lower SPF protection than the Product was represented to provide, causing them to justifiably rely on such misrepresentations in deciding to purchase the Product.

116.    Defendant's conduct, as alleged herein, has been and continues to be substantially injurious to consumers in Florida.

117.    No benefit to consumers or competition results from the unfair and deceptive conduct alleged herein. Since consumers reasonably rely on Defendant's

representations that the Product provides SPF 50 protection, consumers could not have reasonably avoided such injury.

118.   Plaintiff Fahey and Florida Subclass members purchased the Product without knowledge that Defendant's representations that the Product provides "SPF 50" protection were false.

119.   Plaintiff Fahey and the Florida Subclass either would not have purchased the Product at all or would not have paid nearly as much money for the Product had it been labeled, marketed, and advertised with accurate, truthful representations concerning the SPF protection that it provides.

120.   By committing the acts alleged herein, Defendant engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA.

121.   As a direct and proximate result of Defendant's breach, Plaintiff Fahey and members of the Florida Subclass have suffered damages and continue to suffer damages, including economic damages, in terms of the full amount of money they paid for the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

### SIXTH CLAIM FOR RELIEF
### Fraud in Violation of Illinois and Florida Common Law
(By Plaintiffs, Individually and on Behalf of the
Florida Subclass and Illinois Subclass, Against Defendant)

122.   Plaintiffs repeat and incorporate paragraphs 1-59 above as though fully set forth herein.

123.   Plaintiffs bring this claim individually and on behalf of the members of the Florida Subclass and the Illinois Subclass against Defendant under Florida and Illinois common law.

124.   As alleged above, Defendant made false and misleading statements, and omitted material facts, in representing to Plaintiffs, the Florida Subclass and the Illinois Subclass, that the SPF protection provided by the Product is 50.

125.   The actual SPF protection provided by the Product that Plaintiffs, Florida Subclass members, and Illinois Subclass members purchased was far less than the SPF protection that Defendant represented on the labeling of the Product and in materials used to advertise, promote, and market the Product.

126.   Defendant also failed to disclose that the Product did not, in fact, provide SPF protection of 50.

127.   Defendant knowingly and intentionally misrepresented the SPF protection provided by the Product for the purpose of increasing its revenues and maximizing its corporate profits.

128.   Defendant made these misrepresentations and omissions with knowledge of their falsehood.

129.   Defendant's misrepresentations and omissions concerning the SPF protection provided by the Product were intended to induce Plaintiffs, the Florida Subclass members, and Illinois Subclass members to purchase the Product.

130.   And as Defendant intended, its misrepresentations and omissions concerning the SPF protection of the Product induced Plaintiffs, the Florida Subclass members, and Illinois Subclass members to purchase the Product.  In purchasing the Product, Plaintiffs, the Florida Subclass members, and Illinois Subclass members reasonably and justifiably relied on Defendant's misrepresentations and omissions concerning the SPF protection provided by the Product.

131.   Had Plaintiffs, the Florida Subclass members, and Illinois Subclass members known that the Product provided SPF protection materially lower than the SPF protection represented by Defendant on the Product's labeling, and in advertising and promotional materials for the Product, they either would not have

purchased the Product at all or would have paid significantly less for the Product than they did.

132.    The fraudulent actions by Defendant, as alleged herein, caused substantial harm to Plaintiffs, the Florida Subclass members, and Illinois Subclass members, entitling them to monetary damages and other available legal and equitable remedies.

**SEVENTH CLAIM FOR RELIEF**
**Negligent Misrepresentation in Violation of Illinois and Florida Common Law**
(By Plaintiffs, Individually and on Behalf of the
Florida Subclass and the Illinois Subclass, Against Defendant)

133.    Plaintiffs repeat and incorporate paragraphs 1-59 above as though fully set forth herein.

134.    Plaintiffs bring this claim individually and on behalf of the members of the Florida Subclass and the Illinois Subclass against Defendant under Florida and Illinois common law.

135.    Defendant misrepresented a fact.    It advertised that the Product provided SPF protection of 50, when in fact the SPF protection provided by the Product is materially lower.

136.    There were no reasonable grounds for Defendant to believe that these misrepresentations were true.    As an experienced sunscreen producer and manufacturer responsible for testing the sunscreens that it labels, distributes, advertises, promotes, and markets, Defendant should have known that the Product did not in fact provide an SPF protection of 50.

137.    This misrepresentation was material.    Consumers purchase sunscreens to protect themselves and their loved ones from the dangerous effects of sun exposure.    Accordingly, the degree of sun protection as advertised on the Product was a material—if not the sole—factor in Plaintiffs' decision to purchase the

Product.  And this would be true of any reasonable consumer, including members of the Florida Subclass and the Illinois Subclass.

138.    Defendant intended that consumers, like Plaintiffs, the Florida Subclass members and Illinois Subclass members, rely on its representations that the Product provides SPF protection of 50, as stated on the labels of the Product and in advertising and promotional materials for the Product. As alleged herein, that representation was designed solely for consumers, like Plaintiffs, the Florida Subclass members, and Illinois Subclass members, who will ultimately purchase and use the Product on themselves and their loved ones.

139.  Plaintiffs' reliance on Defendant's representation that the Product provided SPF protection of 50 was justifiable.  Plaintiffs had no way of verifying this representation before purchase, and consumers generally rely on the SPF stated on the Product instead of paying the substantial costs to have the Product tested by labs.

140.  Plaintiffs    were    proximately    damaged    by    Defendant's misrepresentations. Had Plaintiffs known that Defendant's representations that the Product provided SPF protection of 50 were false, Plaintiffs would not have paid as much as they did for the Product, or they would not have purchased the Product at all.

141.  Further, Defendant was in a "special relationship" with Plaintiffs, the Florida Subclass members, and Illinois Subclass members, and thus owed them a duty of care, because:

a) The SPF misrepresentations Defendant made on the Product's labels and in advertising and promotional materials for the Product were intended solely to affect the purchasing decisions of consumers, like Plaintiffs, the Florida Subclass members and Illinois Subclass members, who will ultimately base their decision on these SPF claims and who ultimately use the Product on themselves or their loved ones;

b) It was foreseeable that, by misrepresenting an SPF value as being higher than it is, and charging a premium for that added protection, Defendant would economically harm consumers by misleading them into paying an unjustified premium for a sunscreen that lacked the advertised protection;

c) This harm was certain;

d) Defendant's decision to label and advertise, market, and promote the Product as providing SPF 50 protection was the close, proximate cause of Plaintiffs', the Florida Subclass members' and Illinois Subclass members' deception and the fact that they were overcharged for the Product;

e) Misrepresenting the SPF of a sunscreen is egregious and immoral for several reasons, the most obvious being that it leaves consumers vulnerable to sunburn and heightens their risk of skin cancer by misleading them into trusting inadequate sun protection from a lower quality sunscreen. Charging a steep premium for a sunscreen that does not actually protect people from the sun also immorally deprives these consumers of money that they could have spent on more useful, necessary items; and

f) Holding sunscreen producers and manufacturers accountable—to Plaintiffs, Florida Subclass members, and Illinois Subclass members, and other sunscreen consumers—for SPF misrepresentations would deter future misrepresentations, with no perceivable drawbacks.

142. Accordingly, Plaintiffs seek damages on behalf of themselves, Florida Subclass members, and Illinois Subclass members in the full amount of the Product or, at the very least, the amount of money paid for the Product as represented in excess of what a consumer reasonably would have paid for the Product as delivered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the Classes;

B.      For an order finding in favor of Plaintiffs and the Classes and against Defendant on all counts asserted herein;

C.      For actual, compensatory, and/or punitive damages in amounts to be determined by the Court and/or jury;

D.      For prejudgment interest on all amounts awarded;

E.      For an order of restitution and all other forms of equitable monetary relief;

F.      For injunctive relief as pleaded or as the Court may deem proper; and

G.      For an order awarding punitive damages, reasonable attorneys' fees, and costs to counsel for Plaintiffs and the Classes.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiffs demand a trial by jury on all causes of action and issues so triable.


Dated: October 10, 2025                 Respectfully submitted,

*/s/ James J. Reardon, Jr.*
James J. Reardon, Jr. (ct13802)
**REARDON SCANLON LLP**
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Tel.: (860) 955-9455
Fax: (860) 920-5242
james.reardon@reardonscanlon.com

Frank S. Hedin*
Elliot O. Jackson*
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
fhedin@hedinllp.com
ejackson@hedinllp.com

*Counsel for Plaintiffs and Putative Classes*

*\*Pro Hac Vice application forthcoming*