# EXHIBIT  B

Frank S. Hedin (SBN 291289)
Hedin LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131
Telephone:   (305) 357-2107
Facsimile:   (305) 200-8801
E-Mail:      fhedin@hedinllp.com

*Counsel for Plaintiff and Putative Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA BARRALES, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | (JURY TRIAL DEMANDED) |
| L'OREAL USA, INC. D/B/A LA ROCHE-POSAY, LLC, | |
| Defendant. | |

Plaintiff Tina Barrales, individually and on behalf of all others similarly situated, makes the following allegations against Defendant L'Oreal USA, Inc. d/b/a La Roche-Posay, LLC, pursuant to the investigation of her counsel and based upon information and belief, except as to allegations pertaining specifically to herself or her counsel, which are based on personal knowledge.

## NATURE OF THE CASE

1.      Plaintiff brings this action against Defendant L'Oreal USA, Inc. to redress and put a stop to the false, deceptive, and unlawful manner in which Defendant has labeled, packaged, advertised, promoted, and marketed its sunscreen product "La

Roche-Posay Anthelios Melt-In-Milk Sunscreen, SPF 60" (the "Product"). On the Product's labeling and packaging, and in advertising and promotional materials for the Product, Defendant represents that the Product provides a sun protection factor ("SPF") far greater than the SPF that the Product actually provides, thereby deceiving consumers into believing that the Product offers better protection against sunburns and other dangerous effects of exposure to ultraviolet radiation (such as skin cancer and premature aging) than it actually does, and that the Product is thus worth purchasing at prices in excess of the prices charged for sunscreens providing less SPF protection.

2.      Plaintiff and members of the putative Classes (defined below) purchased the Product based on Defendant's representations that the Product provides SPF 60 protection. Unbeknownst to them, however, the Product actually provides only SPF 34 protection—nearly half the protection Defendant represents—as independent laboratory testing commissioned by Plaintiff's counsel has revealed. At SPF 34, the Product provides far less protection from the sun's harmful rays—and is of significantly lower quality and worth far less money—than a sunscreen that actually provides SPF 60 protection.

3.      Defendant has labeled, packaged, advertised, promoted, and marketed the Product as providing greater SPF protection than it actually provides in order to capitalize on consumer demand for sunscreens with high SPFs, such as SPF 60. By promising SPF 60 protection, the Product sells at premium prices and, in turn, generates more revenue and profit for Defendant than its lower-SPF sunscreen counterparts.

4.      By falsely representing the SPF protection provided by the Product, Defendant has misled and continues to mislead consumers into believing that they are purchasing a sunscreen with better quality, filtration, absorption, and reflection capabilities against ultraviolet radiation than the lower-SPF product that they are

- 2 -
CLASS ACTION COMPLAINT

actually receiving, thereby deceiving them into paying a premium price for a non-premium product.

5. Defendant's practices of falsely, deceptively, and misleadingly representing that the Product provides SPF protection of 60 (including on the Product's labeling and packaging and in advertising and promotional materials) induced Plaintiff and numerous other consumers either to purchase products they would otherwise not have purchased at all, or to pay significantly more money for them than if they had been labeled, packaged, advertised and promoted with accurate SPF representations.

6. Accordingly, Plaintiff brings this class action complaint against Defendant to redress and put a stop to its practices of falsely, deceptively, and unlawfully misrepresenting the SPF protection provided by the Product—conduct that has caused significant harm to numerous consumers nationwide, including those residing in California. Plaintiff seeks actual damages, restitution, injunctive relief, and other legal and equitable remedies on behalf of herself and others similarly situated.

## JURISDICTION AND VENUE

7. The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because (i) there are 100 or more members of each of the putative Classes, (ii) the aggregate amount in controversy as to each of the putative Classes exceeds $5,000,000, exclusive of interest and costs, and (iii) at least one member of each of the Classes is a citizen of a state different from Defendant.

8. Personal jurisdiction and venue are proper because Plaintiff resides in Los Angeles County, California, within this judicial District; Plaintiff purchased the Product from a Target retail store in Norwalk, California, within this judicial District, after relying (in this judicial District) on representations made by Defendant concerning the Product on the labeling and packaging of the Product, which was offered for sale and sold in this judicial District; Defendant has advertised and

- 3 -
CLASS ACTION COMPLAINT

promoted and continues to advertise and promote the Product to consumers in California, including in this judicial District; and Defendant has done and continues to do substantial business in California, including in this judicial District.

## PARTIES

9. Plaintiff Tina Barrales is, and at all times relevant hereto was, a citizen and resident of Los Angeles County, California. On or about July 15, 2023, Plaintiff purchased the Product (La Roche-Posay Anthelios Melt-In-Milk Sunscreen, SPF 60), which bears an expiration date of 02/26 and Lot # 18Y204, for $37.99 plus tax at a Target retail store in Norwalk, California.

10. Defendant L'Oreal USA, Inc. d/b/a La Roche-Posay, LLC is a corporation organized and existing under the laws of the State of Delaware that maintains its headquarters and principal place of business in New York, New York. Defendant manufactures or imports, labels, and packages the Product, and advertises, promotes, and markets the Product throughout the United States, including in California. Defendant's products, including the Product at issue in this case, are sold through various online e-commerce platforms and at physical retail locations nationwide, including throughout California.

## FACTUAL ALLEGATIONS

**I. Consumers Perceive Sunscreens with Higher SPF Values as Providing Greater Protection and Justifying Higher Purchase Prices than Their Lower-SPF Value Counterparts**

11. Sunscreens, topically applied products that protect against sunburns and other effects of exposure to ultraviolet radiation (such as skin cancer and premature aging), are sold by numerous companies in varying SPF values, which these companies prominently represent on the products' labels and packaging and in advertisements and other promotional materials for the products.

- 4 -

CLASS ACTION COMPLAINT

12.     SPF is a standardized rating system that measures the fraction of sunburn-producing ultraviolet rays capable of reaching the skin.  The SPF value of a sunscreen product informs consumers of the level of sunburn protection provided by the sunscreen by indicating the approximate measure of time that a person who has applied the sunscreen can stay in the sun without getting burned.  As an example, a product represented as providing SPF 60 protection should permit a person to stay in the sun 60 times longer without burning than if that person were wearing no protection at all.  Thus, a product with a higher SPF is better able to prevent sunburn by filtering, absorbing, reflecting, and/or scattering more ultraviolet radiation than products of a lower SPF.

13.     Academics,[1] legislators,[2] and medical organizations[3] alike have emphasized the importance of sunscreen in protecting against the damaging effects of ultraviolet radiation and the importance of appropriately disclosing the SPF capabilities of sunscreen products.

14.     Consumers are familiar with SPF because SPF values have appeared on sunscreens for decades.  Reasonable consumers have learned to correctly associate

---

[1]     *See* Charles P. Tribby et al., *Perceived Usefulness and Recall of Sunscreen Label Information by Consumers*, 157 JAMA DERMATOLOGY 573 (2021).

[2]     *See* Press Release, *Senator Chuck Schumer: New Report Shows Nearly Half of All Sunscreens Make False Claims About SPF Protection* (July 20, 2016), https://www.schumer.senate.gov/newsroom/press-releases/schumer-new-report-shows-nearly-half-of-all-sunscreens-make-false-claims-about-spf-protection-senator-pushes-fda-to-test-sunscreens-confirm-true-spf-numbers-and-crackdown-on-labels-that-promise-protection-but-instead-leave-consumers-burned.

[3]     S. Kim et al., *Prevalence and Correlates of Sun Protections with Sunburn and Vitamin D Deficiency in Sun-Sensitive Individuals*, 34 J. EUR. ACAD. DERMATOL. VENEREOL. 2664 (2020); AM. ACAD. DERMATOLOGY ASS'N, *How to Select Sunscreen*, https://www.aad.org/public/everyday-care/sun-protection/shade-clothing-sunscreen/how-to-select-sunscreen (last visited Aug. 21, 2025).

- 5 -
CLASS ACTION COMPLAINT

higher SPFs with greater sun protection. Accordingly, reasonable consumers expect that if they purchase and use a sunscreen labeled SPF 60, for instance, that they will be better protected against sunburn and cancer-causing ultraviolet rays than if they had purchased and used a sunscreen labeled as, for instance, SPF 30.

15. Consumers thus rely on representations of the SPF values of sunscreens as they compare, assess, and make decisions on which sunscreen products to purchase.

## II. Defendant's Product

16. The Product in question here, La Roche-Posay Anthelios Melt-In-Milk Sunscreen, SPF 60, is produced, manufactured or imported, labeled, packaged, and advertised, promoted, and marketed by Defendant.

17. Defendant has entered licensing agreements for the Product to be sold in e-commerce platforms online and in physical retail stores across the United States, including but not limited to on the websites of and at retail stores operated by CVS, Amazon, Ulta Beauty, Target, and many others.

18. Regardless of where the Product is sold, the Product is uniformly sold in the same packaging and with the same labeling, which expressly state (in large letters on the front of the bottle and box) that the Product provides SPF "60" protection, as depicted in Figures 1 and 2 below:

- 6 -
CLASS ACTION COMPLAINT



[Figure 1]        [Figure 2]

19. Some online locations where the product is sold, including Amazon, track the number of sales made for the Product. As reflected in Figure 3 below, the Product has been purchased over 10,000 times in the last month alone from Amazon:[4]

---

[4] The Product is offered for purchase at the following Amazon webpage: https://www.amazon.com/Roche-Posay-Anthelios-Cooling-Lotion-Sunscreen/dp/B00TBJWP9K?gQT=2&th=1.

- 7 -

CLASS ACTION COMPLAINT



[Figure 3]

## III. Defendant Falsely, Deceptively, and Misleadingly Represents that the Product Provides SPF Protection of 60

20. Defendant's claim that the Product provides SPF protection of 60 is false, deceptive, and misleading.

21. This is because the SPF protection provided by the Product is not even close to 60, as Defendant represents on the Product's labeling and packaging and in advertising and promotional materials for the Product. In reality, the SPF protection provided by the Product is 34.

22. On or about February 21, 2025, Plaintiff's counsel purchased the Product, which was manufactured in Lot# 18Y902 and contained four active ingredients (Avobenzone 3%, Homosalate 10%, Octisalate 5%, and Octocrylene 7%), for $41.99 plus tax at a CVS retail store in Miami, Florida.

23. Plaintiff's counsel then submitted the purchased Product to a reputable and qualified laboratory for testing. The lab tested the Product by performing a clinical evaluation of static sunscreen efficacy with the sun protection factor (SPF) assay and

- 8 -

calculation of the label SPF, following the FDA testing methods embodied in FDA Final Rule, Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use, 76 Fed. Reg. 35620 (June 17, 2011), and FDA, Final Administrative Order (OTCOOOOO6); Over-the-Counter Monograph MO20: Sunscreen Drug Products for Over-the-Counter Human Use (Sept. 24, 2021). Testing began on May 29, 2025 and concluded on June 13, 2025.

24.    The results of the testing commissioned by Plaintiff's counsel reveal that the Product does not provide SPF 60 protection, but rather SPF 34 protection. *See* Exhibit A ("Final Report" of the Product (referred to therein as "Product B") by Consumer Product Testing Company, dated July 25, 2025).  The lab's test results were derived from the testing methods embodied in the FDA Final Rule referenced above. *See id.*

25.    SPF protection of 34, which testing has revealed the Product actually provides, offers significantly less protection than SPF 60, which Defendant has falsely represented the Product as providing. An SPF protection of 34 is considered substantially lower than an SPF protection of 60, as SPF 34 affords users a significantly shorter period of exposure to ultraviolet radiation without damage when compared to the period of exposure to ultraviolet radiation without damage that SPF 60 affords.

26.    The Product that Plaintiff purchased, like the Product purchased by each member of the Classes during the time period relevant to this action, contained the same percentages of active ingredients as the Product sent for testing by Plaintiff's counsel.  During the time period relevant to this action, there were no reported recalls, manufacturing issues, or other events concerning the Product to suggest that any bottles of the Product might contain different amounts of the active ingredients used in the Product than any other bottles of the Product.  Accordingly, all bottles of the

- 9 -
CLASS ACTION COMPLAINT

Product manufactured, labeled, and packaged by Defendant and purchased by consumers during the time period relevant to this action contained the same or materially the same amounts of each active ingredient and provide the same or materially the same SPF protection—all significantly less protection than SPF 60.

27. Defendant, as the producer, manufacturer or importer, and labeler and packager of the Product, and the employer of a dedicated team of product testing professionals, has been aware or should have been aware, since the Product's inception, that the true SPF protection provided by the Product is significantly lower than 60. Indeed, led by its La Roche-Posay brand, Defendant has been at the forefront of product development and innovation in the sun protection market for over the past thirty years.[5] A video on Defendant's website shows one of its project leaders, Martin Josso, describing the importance the company purports to place on ensuring that each of its sunscreen products is "the most suitable for the person who will be using it," including in terms of "effectiveness," while noting that "there's still room to go further."[6]

---

[5] L'Oréal, *La Roche-Posay: Learn All about Sun Protection with the UVMune400 QR Code*, https://www.loreal.com/en/articles/science-and-technology/qr-code-lrp/ (last visited Aug. 21, 2025); *see also, e.g.,* L'Oréal, 2024 Universal Registration Document, Section 2.1.3, at pp. 294, available at https://www.loreal-finance.com/system/files/2025-03/2024_Universal_Registration_Document_LOREAL.pdf (touting Defendant's recent acquisition of a brand that "is strongly supported by deep knowledge of skin and chemistry with clinical trials led by professional members of the American Board of Dermatology").

[6] Press Release, L'Oréal, *Sunscreen Products: Formulas to Protect You Better and Better*, available at https://perma.cc/P7J9-X4LY (last visited Aug. 21, 2025).

- 10 -
CLASS ACTION COMPLAINT

28. Moreover, based on the Product's chemical formula and ingredients (and the quantities of each) alone, Defendant either knew or should have known that the true SPF protection provided by the Product is significantly lower than SPF 60.

29. Additionally, Defendant was required to perform and did perform testing on the Product, including concerning the protection against ultraviolet radiation provided by the Product, prior to the Product being packaged, labeled, advertised, marketed, distributed, and offered for sale to consumers.[7] Such testing either made or should have made Defendant aware that the true SPF protection provided by the Product is significantly lower than SPF 60.

30. The Environmental Working Group ("EWG"), a non-profit research and consumer advocacy organization comprised of scientists and data analysts, recently analyzed numerous sunscreen products "based on a compilation of standard industry, government and academic data sources; efficacy models constructed by EWG scientists; and a continuous review of the technical literature on sunscreens," including "sunscreen ingredient listings obtained from direct company submissions; online and brick-and-mortar retailers; and [its] data partner, Label Insight."[8] After analyzing Defendant's Product, the EWG concluded, consistent with the independent testing of the Product commissioned by Plaintiff's counsel, that "[b]ased on EWG's modeling, the UV protection [provided by the Product] is significantly lower than the SPF value would indicate."[9]

---

[7] *See, e.g.,* L'Oréal, 2024 Universal Registration Document, Section 4.3.1, at pp. 218 ("New regulations, particularly regarding ingredients and packaging, require L'Oréal to reformulate products and conduct additional tests, which generates significant costs.").

[8] EWG's Methodology for Assessing Sunscreens, available at https://www.ewg.org/sunscreen/report/methodology/ (last accessed Aug. 21, 2025).

[9] "La Roche Posay Anthelios Sunscreen Melt-In-Milk Lotion Face and Body Sunscreen - SPF 60": "Efficacy Concerns", available at

- 11 -

CLASS ACTION COMPLAINT

31.     Plaintiff is just one among numerous consumers nationwide who has been deceived by Defendant's false and misleading representations of the SPF protection provided by the Product, as the following examples of publicly available "reviews"[10] of the Product reflect:



★☆☆☆☆ **Burned to a crisp!**

SandySG
2 years ago
New York, NY

My 2 sons in their 20's and I used both this weekend. Was not hot enough to sweat it off and no one went in the water and we came home burned !

✅ Verified Reviewer

★☆☆☆☆ **Sunburnt after wearing 1.5 hours**

Caitlin
3 years ago
Charleston

This is not water or sweat proof. Wore it to the beach for 90 minutes and am extremely sunburnt. Do not buy.

Sunburn

✅ No, I would not recommend to a friend



★☆☆☆☆ **We got burned**

Laura
1 year ago
Stroudsburg Pa

Our family of 7 went to the beach and I bought two tubes of this product. Five of us used this. Two used another brand I had. Within an hour the five of us that used this had burned backs, despite not getting in water yet. The other two were fine. Also, once in water, eyes started burning, this stuff is not waterproof.

✅ No, I would not recommend to a friend

★☆☆☆☆ **The Worst Face Sunscreen I've Purchased**

Sunburned face
1 year ago
Outer banks, NC

This sunscreen left my face burned and covered in acne the day after using. I applied the sunscreen twice during my beach day and it did not help protect my skin. My nose and cheeks are so red and to top it off it clogged my pores so bad I have a ton of zits! Do not recommend if you have acne prone skin and are wanting to use it for a beach/pool day.

---

https://www.ewg.org/sunscreen/about-the-sunscreens/9949879/La_Roche_Posay_Anthelios_Sunscreen_Melt-In-Milk_Lotion_Face_and_Body_Sunscreen_-_SPF_60/ (last accessed Aug. 21, 2025).

[10]     These reviews are accessible at the following webpage: https://www.ulta.com/p/anthelios-melt-in-milk-body-face-sunscreen-spf-60-pimprod2018267?sku=2570181#reviews.

CLASS ACTION COMPLAINT

32. At all times relevant hereto, Defendant either knew or should have known that its representations that the Product provides SPF protection of 60 were untrue, false and/or misleading, and made these representations knowing that consumers would rely upon the Product's represented SPF value of 60 in deciding to purchase the Product and in using the Product while exposed to the sun's harmful ultraviolet radiation.

33. Defendant's misrepresentations of the SPF protection provided by the Product, on the labeling and packaging of the Product and in advertising and promotional materials for the Product, were made for the purpose of inducing – and did in fact induce – consumers (including Plaintiff and members of the Classes) to purchase the Product at a premium price, based on their reasonable but mistaken beliefs that the Product provides greater protection against the sun's harmful rays than its lower-SPF sunscreen counterparts.

## IV. Plaintiff's Experience

34. Plaintiff purchased the Product on July 15, 2023 in California.

35. SPF was the most important consideration in Plaintiff's decision to purchase the Product. Plaintiff values the quality, filtration, absorption, and reflection capabilities against UV provided by higher SPF sunscreens, such as those of SPF 60 protection.

36. Prior to purchasing the Product, Plaintiff saw—and in making her decision to purchase, she relied on—Defendant's representations, on the label and packaging of the Product, that the Product provided "SPF 60" protection.

37. Prior to purchasing the Product, Plaintiff had no choice but to necessarily and justifiably rely upon the written statements on the Product as accurate. Plaintiff had no ability to review or independently assess Defendant's proprietary knowledge regarding the data and information concerning the chemical formula and performance

- 13 -
CLASS ACTION COMPLAINT

of the Product. Plaintiff had no reason to suspect or know that the Product contained a lower SPF than the value of 60 that Defendant had branded, advertised, and stated in writing on the Product's label and packaging.

38. Based on Defendant's representations on the product's labeling, Plaintiff expected the Product she purchased would be SPF 60 in terms of quality, filtration, absorption, and reflection capabilities against ultraviolet radiation.

39. After purchasing the Product, Plaintiff immediately started using the Product. The Product was not as advertised, and Plaintiff found the product to be neither of the quality, absorption, nor filtration she expected (or that any reasonable consumer would expect) from a sunscreen providing SPF 60 protection. Plaintiff later discontinued her use of the Product after learning that the Product was falsely and deceptively advertised and did not provide SPF 60 protection.

40. Had Plaintiff known that the Product actually provides SPF protection of 34, nearly half that of the SPF 60 protection that Defendant misrepresented the Product as providing (on its labeling and packaging and in advertising and promotional materials), Plaintiff would either not have purchased the Product at all or not paid nearly as much money for the Product.

41. As the direct and proximate result of Defendant's false, deceptive, and misleading statements and omissions concerning the Product, Plaintiff suffered economic injury by paying a premium for an inferior quality good and by being deprived of the full intended use of the Product and the full benefit of the bargain promised by Defendant.

**CLASS ALLEGATIONS**

42. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent the following "Nationwide Class":

- 14 -

CLASS ACTION COMPLAINT

All persons in the United States who, during the six years preceding the filing of this action, purchased "La Roche-Posay Anthelios Melt-In-Milk Sunscreen, SPF 60".

43. Plaintiff additionally seeks to represent the following "California "Subclass" pursuant to Federal Rule of Civil Procedure 23:

All persons who, during the four years preceding the filing of this action, purchased "La Roche-Posay Anthelios Melt-In-Milk Sunscreen, SPF 60" in California.

44. The "Nationwide Class" and the "California Subclass" are at times referred to herein collectively as the "Classes".

45. Plaintiff reserves the right to modify the definitions of the Classes following the commencement of discovery and further investigation.

46. Excluded from the Classes are Defendant, any parent, subsidiary, or affiliate of Defendant, as well as the officers, directors, agents, servants, or employees of the foregoing.

47. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

48. The Classes are so numerous that their individual joinder herein is impracticable. The number of persons within the Classes is substantial. Plaintiff is informed and believes, and thereupon alleges, that there are more than a million persons who comprise the Nationwide Class and at least several hundred thousand persons who comprise the California Subclass. The precise number of members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this

CLASS ACTION COMPLAINT

action by mail and/or publication through the purchase records of Defendant and relevant third parties.

49.     Common questions of law and fact exist for all members of the Classes and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to:

(a)     whether Defendant's representations that the Product provided SPF protection of 60 were false, deceptive, and/or misleading;

(b)     whether Defendant knew or should have known that its misrepresentations, as alleged herein, were false or misleading to consumers;

(c)     whether reasonable consumers would rely on Defendant's misrepresentations concerning the Product's SPF, as alleged herein, and reasonably believe the Product had the capability advertised;

(d)     whether Defendant designed the Product's labeling and packaging, advertising and promotional materials for the Product, and received and retained profits attributable to sales of the Product, in New York;

(e)     Whether Defendant's conduct, as alleged herein, violated the statutes and laws at issue; and

(f)     the damages to which Plaintiff and the Classes are entitled to redress Defendant's unlawful conduct, as alleged herein.

50.     The named Plaintiff's claims are typical of the claims of unnamed members of the Classes in that the named Plaintiff and all members of the Classes suffered similar injuries as a result of the same, uniform conduct and practices by the Defendant, as alleged herein.

51.     Plaintiff is an adequate representative of the Classes she seeks to represent because her interests are aligned, and do not conflict, with the interests of the other members of the Classes, she has retained competent counsel experienced in

- 16 -

prosecuting consumer class actions, and she intends to prosecute this action vigorously.  Plaintiff and her counsel will fairly and adequately protect the interests of the Classes.

52.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable.  The individual interest of each member of the Classes in controlling the prosecution of separate claims is small because the damages at stake for these claims on an individual basis are small.  Even if every member of the Classes could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Classes.  Plaintiff anticipates no difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
(By Plaintiff, Individually and on Behalf of the
Nationwide Class, Against Defendant)

53.   Plaintiff repeats and incorporates paragraphs 1–52 as though fully set forth herein.

54.   Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under New York common law.

- 17 -
CLASS ACTION COMPLAINT

55.     Plaintiff and the Nationwide Class Members have conferred substantial benefits on Defendant by purchasing the Product, including the monetary profits that Defendant received attributable to sales of the Product to Plaintiff and members of the Nationwide Class.

56.     Defendant received and retained, at its corporate headquarters in New York, the monetary profits that it received attributable to sales of the Product to Plaintiff and members of the Nationwide Class. Defendant appreciates or has knowledge of such benefits, which it received in New York and retains in New York.

57.     Defendant has knowingly and willingly accepted and enjoyed these benefits in New York.

58.     Defendant either knew or should have known that the payments rendered by Plaintiff and the Nationwide Class members were given and received with the expectation that the Product would be as represented and warranted.  For Defendant to retain the benefit of Plaintiff's and Nationwide Class members' payments under these circumstances is inequitable.

59.     As a result of the deliberate misrepresentations Defendant made on the labeling and packaging of the Product, and in advertising and promotional materials for the Product, that the Product provided SPF protection of 60—representations Defendant made from its headquarters in New York, on product labeling and packaging and in advertising and promotional materials for the Product that Defendant conceived of and designed from its headquarters in New York—Defendant wrongfully received and retained, in New York (including at bank accounts maintained in New York), monetary revenue and profits attributable to sales of the Product.

60.     As described above, had Plaintiff been aware of the actual SPF protection provided by the Product, she would not have paid as much as she did for the Product, or would not have purchased the Product at all.

- 18 -
CLASS ACTION COMPLAINT

61. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the other Nationwide Class members have suffered actual damages, in the form of the value that Plaintiff and the other Nationwide Class members paid for and ascribed to a product that provides SPF protection of 60, which is what Defendant falsely represented the Product as providing.

62. Equity demands disgorgement of Defendant's ill-begotten gains. Defendant will be unjustly enriched unless it is ordered to disgorge those profits for the benefit of Plaintiff and Nationwide Class members.

63. Plaintiff and the Nationwide Class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

### SECOND CLAIM FOR RELIEF
### Violation of California's UCL (Cal. Bus. & Prof. Code § 17200, *et seq.*)
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

64. Plaintiff repeats and incorporates paragraphs 1–52 as though fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

66. The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

67. Defendant's acts and practices, as alleged herein, were unlawful, unfair, and fraudulent under the UCL.

68. Defendant's conduct, as alleged herein, constituted an "unfair" business act or practice because, as alleged above, Defendant produced, manufactured or imported, and labeled, packaged, marketed, promoted, and advertised the Product

- 19 -

(which was purchased by consumers throughout California) as providing materially greater SPF protection than it actually provides. In doing that, Defendant intentionally mislabeled and misbranded the Product, deceptively and falsely advertised the Product, misrepresented and omitted material facts regarding the Product, and engaged in immoral, unethical, oppressive, and/or unscrupulous activities that were substantially injurious to consumers, offending an established public policy in California. Defendant's conduct, as alleged herein, was also "unfair" because whatever utility Defendant derived from mislabeling the SPF protection provided by its Product was outweighed by the resulting consumer deception and overcharges.

69.     Defendant's representations that the Product provides SPF protection of 60 also constituted "fraudulent" business practices in violation of the UCL because such misrepresentations were intentional and were likely to deceive—and in fact did deceive—reasonable consumers and the public into believing the Product has greater filtration, absorption, and reflection capabilities against ultraviolet radiation than other alternative products providing lower SPF protection than the Product was represented to provide, causing them to justifiably rely on such misrepresentations in deciding to purchase the Product.

70.     Additionally, Defendant's conduct, as alleged herein, was "unlawful" under the UCL because it violates California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq., and California's express warranty law, Cal. Com. Code § 2313.

71.     Plaintiff saw and relied on Defendant's representations that the Product provided SPF protection of 60. These representations were intentionally false, deceptive, and misleading, as described herein.

72.     Reasonable and available alternatives existed to further Defendant's legitimate business interests other than the conduct described herein.

- 20 -
CLASS ACTION COMPLAINT

73. As a result of Defendant's false or misleading SPF representations, Plaintiff and members of the California Subclass have been harmed. As described above, had Plaintiff been aware of the actual SPF protection provided by the Product, she would not have paid as much as she did for the Product, or would not have purchased the Product at all.

74. As a result of its deception, Defendant has been able to reap unjust revenue and profit in violation of the UCL.

75. Unless restrained and enjoined, Defendant will continue to misrepresent the Product as providing SPF protection of 60. Accordingly, injunctive relief is appropriate for Plaintiff and members of the California Subclass.

76. As a result of the above-described conduct, Plaintiff and the California Subclass members seek restitution and disgorgement of all money obtained by Defendant from Plaintiff and California Subclass members as a result of its unlawful, unfair, and/or fraudulent conduct, and as well as injunctive relief and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

**THIRD CLAIM FOR RELIEF**
**Violation of California's FAL (Cal. Bus. & Prof. Code § 17500, *et seq.*)**
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

77. Plaintiff repeats and incorporates paragraphs 1–52 as though fully set forth herein.

78. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

79. California's False Advertising Law (the "FAL")—Cal. Bus. & Prof. Code §§ 17500, *et seq.*—prohibits "any statement" that is "untrue or misleading" and made "with the intent directly or indirectly to dispose of" property or services.

CLASS ACTION COMPLAINT

80. As noted above, Defendant falsely or misleadingly represented that the Product provides SPF protection of 60, when in fact the SPF protection it provides is materially less than 60.

81. Defendant made this misrepresentation for the purposes of inducing purchases of the Product by consumers and maximizing the number of purchases of the Product by consumers.

82. Reasonable consumers, like Plaintiff, were likely to be (and actually were) misled by this misrepresentation. As noted above, there is no practical means for an individual consumer to verify a product's SPF prior to purchase, because verifying a product's SPF requires highly technical and expensive testing. Moreover, reliance on a manufacturer's SPF representations is standard practice by consumers.

83. Plaintiff and California Subclass members suffered economic injury as a result of Defendant's misrepresentations that the Product provides SPF protection of 60. But for Defendant's false SPF claims, Plaintiff and California Subclass members would not have paid as much as they did for the Product or would not have purchased the Product at all. Accordingly, Plaintiff and California Subclass members were misled into paying a price for the Product that they would not have paid had Defendant truthfully and accurately represented the SPF protection provided by the Product.

84. As a result of Defendant's misrepresentations of the SPF protection provided by the Product, Plaintiff and California Subclass members have been injured in the amount of money they paid for the Product in excess of what they would have paid for the Product had its actual SPF value been truthfully and accurately represented.

CLASS ACTION COMPLAINT

## FOURTH CLAIM FOR RELIEF
### Breach of Express Warranty
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

85.    Plaintiff repeats and incorporates paragraphs 1–52 as though fully set forth herein.

86.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant under California Commercial Code § 2313.

87.    Defendant manufactured, labeled and packaged, and advertised and promoted the Product in its regular course of business.

88.    Plaintiff and the California Subclass members purchased the Product.

89.    Defendant represented that the Product provides SPF protection of 60 to the public, including Plaintiff and California Subclass members, on the labeling and packaging of the Product and in advertising and promotional materials for the Product.

90.    Defendant intended its SPF 60 representations—which figure prominently on the Product's labeling and packaging and in advertising and promotional materials for the Product—to be relied upon by consumers like Plaintiff and California Subclass members who would ultimately use the Product on themselves and their loved ones.

91.    Plaintiff reasonably relied on these representations, which formed the basis of her bargain, in purchasing the Product.

92.    Defendant breached this express warranty in that the Product does not provide SPF protection of 60 (but rather provides SPF protection far lower than 60).

93.    The SPF protection represented on the labels and packaging of the Product was false when the sales of the Product to Plaintiff and California Subclass members took place, and the falsity of these representations was undiscoverable by Plaintiff and the California Subclass members at the time they made their purchases.

- 23 -

CLASS ACTION COMPLAINT

94. All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the California Subclass in terms of paying for the goods at issue.

95. Defendant also had actual or constructive notice of its false SPF representations on the labeling and packaging of the Product based upon its testing of the Product and its knowledge of the active ingredients (and the quantities of each) comprising the Product.

96. Defendant's breach of express warranty has caused Plaintiff and the members of the California Subclass to suffer injuries, pay for a falsely labeled Product, and enter into transactions that they would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the California Subclass members have suffered damages and continue to suffer damages, including economic damages, in terms of the difference between the value of the product as promised and the value of the product as delivered.

97. As a result of Defendant's breach of an express warranty, Plaintiff and the members of the California Subclass are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

98. Plaintiff repeats and incorporates paragraphs 1–52 as though fully set forth herein.

- 24 -
CLASS ACTION COMPLAINT

99. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant under California Commercial Code § 2314 and the Song–Beverly Act (Cal. Civ. Code §§ 1790, *et seq.*)

100. Defendant is a "merchant" with respect to the goods at issue here—the Product, a sunscreen lotion.

101. By placing the Product into the stream of commerce, Defendant made—and breached—at least two implied warranties.

102. First, to be merchantable, a product must conform to any written representations on its labels. Because the true SPF protection provided by the Product does not, in fact, comport with the advertised SPF protection provided by the Product, Defendant has breached an implied warranty of merchantability.

103. Second, to be merchantable, the Product must be fit for its intended purpose as a consumer sunscreen lotion. Because consumer sunscreens containing materially less SPF protection than represented are generally considered dangerous and unsuitable, consumer sunscreen represented as providing SPF 60 protection is not fit for its intended purposes if such sunscreen actually provides far less than SPF 60 protection (such as SPF 34 protection in the case of the Product). Defendant breached an implied warranty of merchantability by manufacturing, labeling, packaging, advertising and promoting a product that it represented as providing SPF 60 protection but, in reality, provides only SPF 34 protection.

104. Defendant's breach of these implied warranties has caused Plaintiff and members of the California Subclass to suffer injuries, pay for a falsely labeled Product, and enter into transactions that they would not have entered into at all or for the consideration paid. As a direct and proximate result of Defendant's breach, Plaintiff and members of the California Subclass have suffered damages and continue to suffer

- 25 -
CLASS ACTION COMPLAINT

damages, including economic damages, in terms of the difference between the value of the product as promised and the value of the product as delivered.

**SIXTH CLAIM FOR RELIEF**
**Fraud**
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

105. Plaintiff repeats and incorporates paragraphs 1–52 as though fully set forth herein.

106. Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant under California common law.

107. As alleged above, Defendant made false and misleading statements, and omitted material facts, in representing to Plaintiff and the California Subclass members that the SPF protection provided by the Product is 60.

108. The actual SPF protection provided by the Product that Plaintiff and the California Subclass members purchased was far less than the SPF protection that Defendant represented on the labeling and packaging of the Product and in materials used to advertise, promote, and market the Product.

109. Defendant also failed to disclose that the Product did not, in fact, provide SPF protection of 60.

110. Defendant knowingly and intentionally misrepresented the SPF protection provided by the Product for the purpose of increasing its revenues and maximizing its corporate profits.

111. Defendant made these misrepresentations and omissions with knowledge of their falsehood.

112. Defendant's misrepresentations and omissions concerning the SPF protection provided by the Product were intended to induce Plaintiff and the California Subclass members to purchase the Product.

- 26 -
CLASS ACTION COMPLAINT

113. And as Defendant intended, its misrepresentations and omissions concerning the SPF protection of the Product induced Plaintiff and the California Subclass members to purchase the Product. In purchasing the Product, Plaintiff and the California Subclass members reasonably and justifiably relied on Defendant's misrepresentations and omissions concerning the SPF protection provided by the Product.

114. Had Plaintiff and the California Subclass members known that the Product provided SPF protection materially lower than the SPF protection represented by Defendant on the Product's labeling and packaging, and in advertising, marketing, and promotional materials for the Product, they either would not have purchased the Product at all or would have paid significantly less for the Product than they did.

115. The fraudulent actions by Defendant, as alleged herein, caused substantial harm to Plaintiff and the members of the California Subclass, entitling them to monetary damages and other available legal and equitable remedies.

## SEVENTH CLAIM FOR RELIEF
### Negligent Misrepresentation
(By Plaintiff, Individually and on Behalf of the
California Subclass, Against Defendant)

116. Plaintiff repeats and incorporates paragraphs 1–52 as though fully set forth herein.

117. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant under California common law.

118. Defendant misrepresented a fact. It advertised that the Product provided SPF protection of 60, when in fact the SPF protection provided is materially lower.

119. There were no reasonable grounds for Defendant to believe that these misrepresentations were true. As an experienced sunscreen manufacturer responsible for testing the sunscreens that it labels, packages, advertises, promotes, and markets,

- 27 -
CLASS ACTION COMPLAINT

Defendant should have known that the Product did not in fact provide an SPF protection of 60.

120.    This misrepresentation was material.  Consumers purchase sunscreens to protect themselves and their loved ones from the dangerous effects of sun exposure.  Accordingly, the degree of sun protection as advertised on the Product was a material—if not the sole—factor in Plaintiff's decision to purchase Defendant's product.  And this would be true of any reasonable consumer, including members of the California Subclass.

121.    Defendant intended that consumers, like Plaintiff and members of the California Subclass, rely on its representation that the Product provided SPF protection of 60, as stated on the labels and packaging of the Product and in advertising, marketing, and promotional materials for the Product.  As alleged herein, that representation was designed solely for consumers, like Plaintiff and California Subclass members, who will ultimately purchase and use the Product on themselves and their loved ones.

122.    Plaintiff's reliance on Defendant's representation that the Product provided SPF protection of 60 was justifiable.  Plaintiff had no way of verifying this representation before purchase, and consumers generally rely on the SPF stated on the Product instead of paying the substantial costs to have the product tested by labs.

123.    Plaintiff was proximately damaged by Defendant's misrepresentations.  Had Plaintiff known that Defendant's representations that the Product provided SPF protection of 60 were false, Plaintiff would not have paid as much as she did for the Product, or she would not have purchased the product at all.

124.    Further, Defendant was in a "special relationship" with Plaintiff and the California Subclass members, and thus owed them a duty of care because:

CLASS ACTION COMPLAINT

a) The SPF misrepresentations Defendant made on the Product's labels and packaging and in advertising and promotional materials for the Product were intended solely to affect the purchasing decisions of consumers, like Plaintiff and California Subclass members, who will ultimately base their decision on these SPF claims and who ultimately use the Product on themselves or their loved ones.

b) It was foreseeable that, by misrepresenting an SPF value as being higher than it is, and charging a premium for that added protection, Defendant would economically harm consumers by misleading them into paying an unjustified premium for a sunscreen that lacked the advertised protection.

c) This harm was certain.

d) Defendant's decision to label and package and advertise, market, and promote the Product as providing SPF 60 protection was the close, proximate cause of Plaintiff's and California Subclass members' deception and the fact that they were overcharged for this product.

e) Misrepresenting the SPF of a sunscreen is egregious and immoral for several reasons, the most obvious being that it leaves consumers vulnerable to sunburn and heightens their risk of skin cancer by misleading them into trusting inadequate sun protection from a lower quality sunscreen. Charging a steep premium for a sunscreen that does not actually protect people from the sun also immorally deprives these consumers of money that they could have spent on more useful, necessary items.

f) Holding sunscreen manufacturers accountable—to Plaintiff, California Subclass members, and other sunscreen consumers—for SPF misrepresentations would deter future misrepresentations, with no perceivable drawbacks.

125. Accordingly, Plaintiff seeks damages on behalf of herself and the California Subclass members in the amount of the overcharges they paid for Product.

- 29 -
CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A.      For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

B.      For an order finding in favor of Plaintiff and the Classes and against Defendant on all counts asserted herein;

C.      For actual, compensatory, and/or punitive damages in amounts to be determined by the Court and/or jury;

D.      For prejudgment interest on all amounts awarded;

E.      For an order of restitution and all other forms of equitable monetary relief;

F.      For injunctive relief as pleaded or as the Court may deem proper; and

G.      For an order awarding punitive damages, reasonable attorneys' fees, and costs to counsel for Plaintiff and the Classes.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: August 22, 2025                     Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
fhedin@hedinllp.com

*Counsel for Plaintiff and Putative Classes*

- 30 -
CLASS ACTION COMPLAINT