# EXHIBIT C

Frank S. Hedin (SBN 291289)
Hedin LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

*Counsel for Plaintiffs and Putative Classes*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA FAHEY; and KEVIN SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUN BUM LLC,<br><br>Defendant. | Case No. '25CV2263 H ___ SBC<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Andrea Fahey ("Plaintiff Fahey") and Kevin Smith ("Plaintiff Smith") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations pertaining specifically to themselves or their counsel, which are based on personal knowledge.

## NATURE OF THE CASE

1. Plaintiffs bring this action against Defendant Sun Bum LLC to redress and put a stop to the false, deceptive, and unlawful manner in which Defendant has labeled, distributed, advertised, promoted, and marketed its sunscreen product "Sun

Bum SPF 50 Mineral Sunscreen Lotion" (the "Product"). On the Product's labeling, and in advertising and promotional materials for the Product, Defendant represents that the Product provides a sun protection factor ("SPF") that is far higher than the SPF that the Product actually provides, thereby deceiving consumers into believing that the Product offers better protection against sunburns and other dangerous effects of exposure to ultraviolet radiation (such as skin cancer and premature aging) than it actually provides, and that the Product is thus worth purchasing at a price higher than what is charged for other lower-SPF sunscreens.

2. Plaintiffs and members of the putative Classes (defined below) purchased the Product based on Defendant's representations that the Product provides SPF 50 protection. Unbeknownst to them, however, the Product actually provides only SPF 17 protection—nearly one-third of the protection Defendant represents—as independent laboratory testing commissioned by Plaintiffs' counsel has revealed. At SPF 17, the Product provides far less protection from the sun's harmful rays—and is of significantly lower quality and worth far less money—than a sunscreen that actually provides SPF 50 protection.

3. Defendant has labeled, distributed, advertised, promoted, and marketed the Product as providing greater protection against the sun's harmful rays than it actually provides in order to capitalize on consumer demand for high-SPF sunscreens, such as SPF 50 sunscreens. By promising SPF 50 protection, the Product sells at premium prices and, in turn, generates more revenue and profit for Defendant than its lower-SPF sunscreen counterparts.

4. By falsely representing the SPF protection provided by the Product, Defendant has knowingly misled and continues to knowingly mislead consumers into believing that they are purchasing a sunscreen with better quality, filtration, absorption, and reflection capabilities against ultraviolet radiation than the lower-SPF

- 2 -
CLASS ACTION COMPLAINT

product that they actually receive, thereby deceiving them into paying a premium price for a non-premium product.

5. Defendant's practices of falsely, deceptively, and misleadingly representing that the Product provides SPF protection of 50 (including on the Product's labeling and in advertising and promotional materials) induced Plaintiffs and numerous other consumers into either purchasing a product they otherwise would not have purchased at all, or paying significantly more for a product than they would have paid had it been labeled, distributed, advertised and promoted with accurate SPF representations.

6. Accordingly, Plaintiffs bring this class action complaint against Defendant to redress and put a stop to its practices of falsely, deceptively, and unlawfully misrepresenting the SPF protection provided by the Product—conduct that has caused and continues to cause significant harm to consumers nationwide, including in California and Florida. Plaintiffs seek actual damages, restitution, injunctive relief, and other legal and equitable remedies on behalf of themselves and others similarly situated.

## JURISDICTION AND VENUE

7. The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because (i) there are 100 or more members of each of the putative Classes, (ii) the aggregate amount in controversy as to each of the putative Classes exceeds $5,000,000, exclusive of interest and costs, and (iii) at least one member of each of the Classes is a citizen of a state different from Defendant.

8. Personal jurisdiction and venue are proper because Defendant maintains its headquarters and principal place of business in Encinitas, California, within this judicial District.

- 3 -
CLASS ACTION COMPLAINT

## PARTIES

9. Plaintiff Fahey is, and at all times relevant hereto was, a citizen and resident of Indian River County, Florida. On or about April 30, 2025, Plaintiff Fahey purchased the Product (Sun Bum SPF 50 Mineral Sunscreen Lotion), bearing Lot # S407DH and containing the active ingredient Zinc Oxide 20%, in a purchase totaling $31.63 plus tax at a Publix grocery store in Florida.

10. Plaintiff Smith is, and at all times relevant hereto was, a citizen and resident of Alameda County, California. On or about June 9, 2025, Plaintiff Smith purchased the Product (Sun Bum SPF 50 Mineral Sunscreen Lotion), bearing Lot # S518IH and containing the active ingredient Zinc Oxide 20%, in a purchase totaling $106.35 plus tax at a Target retail store in California.

11. Defendant Sun Bum, LLC is a Michigan limited liability company with its principal place of business located in Encinitas, California. Defendant manufactures and labels the Product, and advertises, promotes, and markets the Product throughout the United States, including in California and Florida. Defendant's products, including the Product at issue in this case, are sold through various online e-commerce platforms and at physical retail locations nationwide, including throughout California and Florida.

## FACTUAL ALLEGATIONS

**I. Consumers Perceive High-SPF Sunscreens as Providing Greater Protection from the Sun and Justifying Higher Purchase Prices than Their Lower-SPF Sunscreen Counterparts**

12. Sunscreens, topically applied products that protect against sunburns and other effects of exposure to ultraviolet radiation (such as skin cancer and premature aging), are sold by numerous companies in varying SPF values, which these companies prominently represent on the products' labels and in advertisements and other promotional materials for the products.

- 4 -
CLASS ACTION COMPLAINT

13. SPF is a standardized rating system that measures the fraction of sunburn-producing ultraviolet rays capable of reaching the skin. The SPF value of a sunscreen product informs consumers of the level of sunburn protection provided by the sunscreen by indicating the approximate measure of time that a person who has applied the sunscreen can stay in the sun without getting burned. As an example, a product represented as providing SPF 50 protection should permit a person to stay in the sun 50 times longer without burning than if that person were wearing no protection at all. Thus, a product with a higher SPF is better able to prevent sunburn by more effectively filtering, absorbing, reflecting, and/or scattering more ultraviolet radiation than products of a lower SPF.

14. Academics,[1] legislators,[2] and medical organizations[3] alike have emphasized the importance of sunscreen in protecting against the damaging effects of ultraviolet radiation and the importance of appropriately disclosing the SPF capabilities of sunscreen products.

15. Consumers are familiar with SPF because SPF values have appeared on sunscreens for decades. Reasonable consumers have learned to correctly understand

---

[1] *See* Charles P. Tribby et al., *Perceived Usefulness and Recall of Sunscreen Label Information by Consumers*, 157 JAMA DERMATOLOGY 573 (2021).

[2] *See* Press Release, *Senator Chuck Schumer: New Report Shows Nearly Half of All Sunscreens Make False Claims About SPF Protection* (July 20, 2016), https://www.schumer.senate.gov/newsroom/press-releases/schumer-new-report-shows-nearly-half-of-all-sunscreens-make-false-claims-about-spf-protection-senator-pushes-fda-to-test-sunscreens-confirm-true-spf-numbers-and-crackdown-on-labels-that-promise-protection-but-instead-leave-consumers-burned.

[3] S. Kim et al., *Prevalence and Correlates of Sun Protections with Sunburn and Vitamin D Deficiency in Sun-Sensitive Individuals*, 34 J. EUR. ACAD. DERMATOL. VENEREOL. 2664 (2020); AM. ACAD. DERMATOLOGY ASS'N, *How to Select Sunscreen*, https://www.aad.org/public/everyday-care/sun-protection/shade-clothing-sunscreen/how-to-select-sunscreen (last visited Aug. 21, 2025).

CLASS ACTION COMPLAINT

that higher-SPF sunscreens provide greater protection against the sun's harmful rays than lower-SPF sunscreens. Accordingly, reasonable consumers expect that if they purchase and use a sunscreen labeled SPF 50, for instance, that they will be better protected against sunburn and cancer-causing ultraviolet rays than if they had purchased and used a sunscreen labeled as, for instance, SPF 30.

16. Consumers thus rely on representations of the SPF values of sunscreens as they compare, assess, and make decisions on which sunscreen products to purchase.

## II. Defendant's Product

17. The Product in question here, Sun Bum SPF 50 Mineral Sunscreen Lotion, is produced, manufactured, labeled, distributed, and advertised, promoted, and marketed by Defendant.

18. Defendant has entered licensing agreements for the Product to be sold in e-commerce platforms online and in physical retail stores across the United States, including but not limited to on the websites of and at retail stores operated by CVS, Amazon, Ulta Beauty, Target, and many others.

19. Regardless of where the Product is sold, the Product is uniformly sold in the same bottles and with the same labeling, which expressly state (in large letters on the front of the bottle and box) that the Product provides SPF "50" protection, as shown below:

- 6 -

CLASS ACTION COMPLAINT



20.     Some online locations where the Product is sold, including Amazon, track the number of sales made for the Product. As shown below, the Product has been purchased over 2,000 times in the last month alone from Amazon:[4]



---

[4]     The Product is offered for purchase at the following Amazon webpage: https://www.amazon.com/Sun-Bum-Sunscreen-Protection-Hypoallergenic/dp/B072KGPSYP?th=1.

CLASS ACTION COMPLAINT

## III. Defendant Falsely, Deceptively, and Misleadingly Represents that the Product Provides SPF 50 Protection

21. Defendant's claim that the Product provides SPF 50 protection is false, deceptive, and misleading.

22. This is because the SPF protection provided by the Product is not even close to 50. In reality, the SPF protection provided by the Product is 17.

23. On or about February 21, 2025, Plaintiffs' counsel purchased the Product, bearing Lot# S407DN and containing the active ingredient Zinc Oxide 20%, for $19.99 plus tax at a CVS retail store in Miami, Florida.

24. Plaintiffs' counsel then submitted the purchased Product to a reputable and qualified laboratory for testing. The lab tested the Product by performing a clinical evaluation of static sunscreen efficacy with the sun protection factor (SPF) assay and calculation of the label SPF, following the FDA testing methods embodied in FDA Final Rule, Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use, 76 Fed. Reg. 35620 (June 17, 2011), and FDA, Final Administrative Order (OTCOOOOO6); Over-the-Counter Monograph MO20: Sunscreen Drug Products for Over-the-Counter Human Use (Sept. 24, 2021). Testing began on May 30, 2025 and concluded on June 28, 2025.

25. The result of the testing commissioned by Plaintiffs' counsel reveals that the Product does not provide SPF 50 protection – but instead provides merely SPF 17 protection. *See* **Exhibit A** ("Final Report" of the Product (referred to therein as "Product D") by Consumer Product Testing Company, dated August 5, 2025). The lab's test result was derived from the testing methods embodied in the FDA Final Rule and FDA Final Administrative Order referenced above. *See id.*

26. SPF protection of 17, the actual SPF protection provided by the Product as revealed by the testing commissioned by Plaintiffs' counsel, offers significantly less

- 8 -
CLASS ACTION COMPLAINT

protection than SPF 50, which Defendant has falsely represented the Product to consumers as providing. SPF 17 protection affords users a significantly shorter period of exposure to ultraviolet radiation without damage when compared to the period of exposure to ultraviolet radiation without damage that SPF 50 protection affords.

27. The Product that Plaintiffs purchased, like the Product purchased by each member of the Classes during the time period relevant to this action, contained the same percentage of active ingredients as the Product sent for testing by Plaintiffs' counsel. During the time period relevant to this action, there were no reported recalls, manufacturing issues, or other events concerning the Product to suggest that any bottles of the Product might contain different amounts of the active ingredient used in the Product than any other bottles of the Product. Accordingly, all bottles of the Product manufactured, labeled, and distributed by Defendant and purchased by consumers during the time period relevant to this action contain the same or materially the same active ingredient and provide the same or materially the same SPF protection—all significantly less protection than SPF 50.

28. Defendant, as the producer, manufacturer, distributor, and labeler of the Product, and the employer of a dedicated team of product testing professionals, has been aware or should have been aware, since the Product's inception, that the true SPF protection provided by the Product is significantly lower than 50. For 15 years, Defendant has manufactured products designed "to protect our friends and families from the sun."[5] And to better advertise, promote, and market its products, Defendant

---

[5] See Sun Bum, *About Us*, available at https://www.sunbum.com/pages/about-us (last visited August 25, 2025).

- 9 -
CLASS ACTION COMPLAINT

maintains a "Trust the Bum" campaign that encourages consumers to trust its products based on Defendant's superior knowledge and experience in sunburn protection.[6]

29. Moreover, based on the Product's chemical formula and active ingredients alone, Defendant either knew or should have known that the true SPF protection provided by the Product is significantly lower than SPF 50.

30. Additionally, Defendant was required to perform and did perform testing on the Product, including concerning the protection against ultraviolet radiation provided by the Product, prior to the Product being labeled, advertised, marketed, distributed, and offered for sale to consumers.[7] Such testing either made or should have made Defendant aware that the true SPF protection provided by the Product is significantly lower than SPF 50.

31. Plaintiffs are just two among numerous consumers nationwide who have been deceived by Defendant's false and misleading representations of the SPF

---

[6] Sun Bum, *Sun Education*, available at https://www.sunbum.com/pages/sun-protection-guide#shopify-section-template--18448930996271__main_media_bleed_ftCFDX (last visited August 25, 2025) (touting that Trust the Bum campaign "means trust us, the ones who live on the beach and need products that work on even the most intense days in the sun, and claiming that "the simple truth is, when you make products to protect the ones you love, you make 'em better"); *see also* Sun Bum, *Hawaii Act 104 Compliant*, available at https://www.sunbum.com/pages/hawaii-act-104-reef-compliant?_pos=6&_sid=56df65940&_ss=r (last visited August 25, 2025) ("Our goal is to continue making more effective sunscreen products with the best ingredients possible for the purpose of protecting ourselves, our kids and our community from the harmful dangers of the sun.").

[7] *See, e.g.,* Sun Bum, *Hawaii Act 104 Compliant*, available at https://www.sunbum.com/pages/hawaii-act-104-reef-compliant?_pos=6&_sid=56df65940&_ss=r (last visited August 25, 2025) (explaining that its "sunscreens are made without Oxybenzone and Octinoxate" in compliance with Hawaii's law and research on these ingredients).

- 10 -
CLASS ACTION COMPLAINT

protection provided by the Product, as the following examples of publicly available "reviews"[8] of the Product reflect:







32. At all times relevant hereto, Defendant either knew or should have known that its representations that the Product provides SPF protection of 50 were untrue, false and/or misleading, and made these representations knowing that consumers would rely upon the Product's represented SPF value of 50 in deciding to purchase the Product and in using the Product while exposed to the sun's harmful ultraviolet radiation.

33. Defendant's misrepresentations of the SPF protection provided by the Product, on the labeling of the Product and in advertising and promotional materials

---

[8] These reviews are accessible at the following webpage: https://www.amazon.com/product-reviews/B072KGPSYP/ref=cm_cr_unknown?ie=UTF8&reviewerType=all_reviews&filterByStar=one_star&pageNumber=1.

CLASS ACTION COMPLAINT

for the Product, were made for the purpose of inducing—and did in fact induce—consumers (including Plaintiffs and members of the Classes) to purchase the Product at a premium price, based on their reasonable but mistaken beliefs that the Product provides greater protection against the sun's harmful rays than its lower-SPF sunscreen counterparts.

## IV. Plaintiffs' Experiences

### A. Plaintiff Fahey

34. Plaintiff Fahey purchased the Product on or about April 30, 2025 in Florida.

35. SPF was the most important consideration in Plaintiff Fahey's decision to purchase the Product. Plaintiff Fahey values the filtration, absorption, and reflection capabilities against UV rays provided by high SPF sunscreens, such as those of SPF 50 protection.

36. Prior to purchasing the Product, Plaintiff Fahey saw—and in making her decision to purchase, she relied on—Defendant's representations on the label of the Product that the Product provided "SPF 50" protection.

37. Prior to purchasing the Product, Plaintiff Fahey had no choice but to necessarily and justifiably rely upon the written statements on the Product as accurate. Plaintiff Fahey had no ability to review or independently assess Defendant's proprietary knowledge regarding the data and information concerning the chemical formula and performance of the Product. Plaintiff Fahey had no reason to suspect or know that the Product contained a lower SPF than the value of 50 that Defendant had branded, advertised, and stated in writing on the Product's label.

38. Based on Defendant's representations on the product's labeling, Plaintiff Fahey expected the Product she purchased would be SPF 50 in terms of quality, filtration, absorption, and reflection capabilities against ultraviolet radiation.

- 12 -

CLASS ACTION COMPLAINT

39. After purchasing the Product, Plaintiff Fahey immediately started using the Product. The Product was not as advertised, and Plaintiff Fahey found the product to be neither of the quality, absorption, nor filtration she expected (nor that any reasonable consumer would expect) from a sunscreen providing SPF 50 protection. As a result, Plaintiff Fahey later discontinued her use of the Product.

40. As the direct and proximate result of Defendant's false, deceptive, and misleading statements and omissions concerning the Product, Plaintiff Fahey suffered economic injury by paying a premium for an inferior quality good and by being deprived of the full intended use of the Product and the full benefit of the bargain promised by Defendant.

**B. Plaintiff Smith**

41. Plaintiff Smith purchased the Product on or about June 5, 2025 in California.

42. SPF was the most important consideration in Plaintiff Smith's decision to purchase the Product. Plaintiff Smith values the filtration, absorption, and reflection capabilities against UV rays provided by high SPF sunscreens, such as those of SPF 50 protection.

43. Prior to purchasing the Product, Plaintiff Smith saw—and in making his decision to purchase, he relied on—Defendant's representations on the label of the Product that the Product provided "SPF 50" protection.

44. Prior to purchasing the Product, Plaintiff Smith had no choice but to necessarily and justifiably rely upon the written statements on the Product as accurate. Plaintiff Smith had no ability to review or independently assess Defendant's proprietary knowledge regarding the data and information concerning the chemical formula and performance of the Product. Plaintiff Smith had no reason to suspect or

- 13 -

know that the Product contained a lower SPF than the value of 50 that Defendant had branded, advertised, and stated in writing on the Product's label.

45. Based on Defendant's representations on the product's labeling, Plaintiff Smith expected the Product he purchased would be SPF 50 in terms of quality, filtration, absorption, and reflection capabilities against ultraviolet radiation.

46. After purchasing the Product, Plaintiff Smith immediately started using the Product. The Product was not as advertised, and Plaintiff Smith found the product to be neither of the quality, absorption, nor filtration he expected (nor that any reasonable consumer would expect) from a sunscreen providing SPF 50 protection. As a result, Plaintiff Smith later discontinued his use of the Product.

47. Had Plaintiffs known that the Product actually provides SPF protection of 17, nearly one-third of the SPF 50 protection that Defendant misrepresented the Product as providing (on its labeling and in advertising and promotional materials), Plaintiffs would either not have purchased the Product at all or not paid nearly as much money for the Product.

48. As the direct and proximate result of Defendant's false, deceptive, and misleading statements and omissions concerning the Product, Plaintiff Smith suffered economic injury by paying a premium for an inferior quality good and by being deprived of the full intended use of the Product and the full benefit of the bargain promised by Defendant.

## CLASS ALLEGATIONS

49. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent the following "Nationwide Class":

> All persons in the United States who, during the applicable limitation period, purchased "Sun Bum SPF 50 Mineral Sunscreen Lotion."

- 14 -
CLASS ACTION COMPLAINT

50. Plaintiff Smith seeks to represent the following "California Subclass" pursuant to Federal Rule of Civil Procedure 23:

All persons who, during the applicable limitation period, purchased "Sun Bum SPF 50 Mineral Sunscreen Lotion" in California.

51. Plaintiff Fahey seeks to represent the following "Florida Subclass" pursuant to Federal Rule of Civil Procedure 23:

All persons who, during the applicable limitation period, purchased "Sun Bum SPF 50 Mineral Sunscreen Lotion" in Florida.

52. The "Nationwide Class," "California Subclass," and the "Florida Subclass" are at times referred to herein collectively as the "Classes".

53. Plaintiffs reserve the right to modify the definitions of the Classes following the commencement of discovery and further investigation.

54. Excluded from the Classes are Defendant, any parent, subsidiary, or affiliate of Defendant, as well as the officers, directors, agents, servants, or employees of the foregoing.

55. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

56. The Classes are so numerous that their individual joinder herein is impracticable. The number of persons within the Classes is substantial. Plaintiffs are informed and believe, and thereupon allege, that there are more than a million persons who comprise the Nationwide Class, at least several hundred thousand persons who comprise the California Subclass, and at least several hundred thousand persons who comprise the Florida Subclass. The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by

- 15 -

mail and/or publication through the purchase records of Defendant and relevant third parties.

57. Common questions of law and fact exist for all members of the Classes and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to:

(a) whether Defendant's representations that the Product provided SPF protection of 50 were false, deceptive, and/or misleading;

(b) whether Defendant knew or should have known that its misrepresentations, as alleged herein, were false or misleading to consumers;

(c) whether reasonable consumers would rely on Defendant's misrepresentations concerning the Product's SPF, as alleged herein, and reasonably believe the Product had the capability advertised;

(d) whether Defendant designed the Product's labeling, advertising and promotional materials for the Product, and received and retained profits attributable to sales of the Product, in California;

(e) Whether Defendant's conduct, as alleged herein, violated the statutes and laws at issue; and

(f) the damages to which Plaintiffs and the Classes are entitled to redress Defendant's unlawful conduct, as alleged herein.

58. The named Plaintiffs' claims are typical of the claims of unnamed members of the Classes in that the named Plaintiffs and all members of the Classes suffered similar injuries as a result of the same, uniform conduct and practices by the Defendant, as alleged herein.

59. Plaintiffs are adequate representatives of the Classes they seek to represent because their interests are aligned, and do not conflict, with the interests of the other members of the Classes, they have retained competent counsel experienced

CLASS ACTION COMPLAINT

in prosecuting consumer class actions, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Classes.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. The individual interest of each member of the Classes in controlling the prosecution of separate claims is small because the damages at stake for these claims on an individual basis are small. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
(By Plaintiffs, Individually and on Behalf of the
Nationwide Class, Against Defendant)

61. Plaintiffs repeat and incorporate paragraphs 1–60 as though fully set forth herein.

62. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class against Defendant under California common law.

- 17 -
CLASS ACTION COMPLAINT

63. Plaintiffs and the Nationwide Class Members have conferred substantial benefits on Defendant by purchasing the Product, including the monetary profits that Defendant received attributable to sales of the Product to Plaintiffs and members of the Nationwide Class.

64. Defendant received and retained, at its corporate headquarters in California, the monetary profits that it received attributable to sales of the Product to Plaintiffs and members of the Nationwide Class. Defendant appreciates or has knowledge of such benefits, which it received in California and retains in California.

65. Defendant has knowingly and willingly accepted and enjoyed these benefits in California.

66. Defendant either knew or should have known that the payments rendered by Plaintiffs and the Nationwide Class members were given and received with the expectation that the Product would be as represented and warranted. For Defendant to retain the benefit of Plaintiffs' and Nationwide Class members' payments under these circumstances is inequitable.

67. As a result of the deliberate misrepresentations Defendant made on the labeling of the Product, and in advertising and promotional materials for the Product, that the Product provided SPF protection of 50—representations Defendant made from its headquarters in California, on product labeling and in advertising and promotional materials for the Product that Defendant conceived of and designed from its headquarters in California—Defendant wrongfully received and retained, in California (including at bank accounts maintained in California), monetary revenue and profits attributable to sales of the Product.

68. As described above, had Plaintiffs been aware of the actual SPF protection provided by the Product, they would not have paid as much as they did for the Product or would not have purchased the Product at all.

CLASS ACTION COMPLAINT

69. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the other Nationwide Class members have suffered actual damages, in the form of the value that Plaintiffs and the other Nationwide Class members paid for and ascribed to a product that provides SPF protection of 50, which is what Defendant falsely represented the Product as providing.

70. Equity demands disgorgement of Defendant's ill-begotten gains. Defendant will be unjustly enriched unless it is ordered to disgorge those profits for the benefit of Plaintiffs and Nationwide Class members.

71. Plaintiffs and the Nationwide Class members are entitled to restitution from Defendant and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendant through this inequitable conduct.

**SECOND CLAIM FOR RELIEF**
**Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***
(By Plaintiff Smith, Individually and on Behalf of the
California Subclass, Against Defendant)

72. Plaintiff Smith repeats and incorporates paragraphs 1–60 as though fully set forth herein.

73. Plaintiff Smith brings this claim individually and on behalf of the members of the California Subclass against Defendant.

74. The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* (the "UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

75. Defendant's acts and practices, as alleged herein, were unlawful, unfair, and fraudulent under the UCL.

76. Defendant's conduct, as alleged herein, constituted an "unfair" business act or practice because, as alleged above, Defendant produced, manufactured, labeled, distributed, marketed, promoted, and advertised the Product (which was purchased by

- 19 -
CLASS ACTION COMPLAINT

consumers throughout California) as providing an SPF protection of 50, which it knew or should have known is materially higher than the SPF protection that it actually provides. In so doing, Defendant intentionally, deceptively, and falsely labeled and advertised the Product and omitted material facts regarding the Product, and engaged in immoral, unethical, oppressive, and/or unscrupulous activities that were substantially injurious to consumers, offending an established public policy in California. Defendant's conduct, as alleged herein, was also "unfair" because whatever utility Defendant derived from mislabeling the SPF protection provided by its Product was outweighed by the resulting consumer deception and overcharges.

77. Defendant's representations that the Product provides SPF protection of 50 also constituted "fraudulent" business practices in violation of the UCL because such misrepresentations were intentional and were likely to deceive—and in fact did deceive—reasonable consumers and the public into believing the Product has greater filtration, absorption, and reflection capabilities against ultraviolet radiation than other alternative products providing lower SPF protection than the Product was represented to provide, causing them to justifiably rely on such misrepresentations in deciding to purchase the Product.

78. Additionally, Defendant's conduct, as alleged herein, was "unlawful" under the UCL because it violates California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and California's express warranty law, Cal. Com. Code § 2313.

79. Plaintiff Smith saw and relied on Defendant's representations that the Product provided SPF protection of 50. These representations were intentionally false, deceptive, and misleading, as described herein.

80. Reasonable and available alternatives existed to further Defendant's legitimate business interests other than the conduct described herein.

- 20 -

CLASS ACTION COMPLAINT

81. As a result of Defendant's false or misleading SPF representations, Plaintiff Smith and members of the California Subclass have been harmed. As described herein, had Plaintiff Smith been aware of the actual SPF protection provided by the Product, he would not have paid as much as he did for the Product or would not have purchased the Product at all.

82. As a result of its deception, Defendant has been able to reap unjust revenue and profit in violation of the UCL.

83. Unless restrained and enjoined, Defendant will continue to misrepresent the Product as providing SPF protection of 50. Accordingly, injunctive relief is appropriate for Plaintiff Smith and members of the California Subclass.

84. As a result of the above-described conduct, Plaintiff Smith and the California Subclass members seek restitution and disgorgement of all money obtained by Defendant from Plaintiff Smith and California Subclass members as a result of its unlawful, unfair, and/or fraudulent conduct, and as well as injunctive relief and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

**THIRD CLAIM FOR RELIEF**
**Violation of Cal. Bus. & Prof. Code § 17500, *et seq.***
(By Plaintiff Smith, Individually and on Behalf of the
California Subclass, Against Defendant)

85. Plaintiff Smith repeats and incorporates paragraphs 1–60 as though fully set forth herein.

86. Plaintiff Smith brings this claim individually and on behalf of the members of the California Subclass against Defendant.

87. California's False Advertising Law (the "FAL")—Cal. Bus. & Prof. Code §§ 17500, *et seq.*—prohibits "any statement" that is "untrue or misleading" and made "with the intent directly or indirectly to dispose of" property or services.

- 21 -
CLASS ACTION COMPLAINT

88. As noted above, Defendant falsely or misleadingly represented that the Product provides SPF protection of 50, when in fact the SPF protection it provides is materially less than 50.

89. Defendant made this misrepresentation for the purposes of inducing purchases of the Product by consumers and maximizing the number of purchases of the Product by consumers.

90. Reasonable consumers, like Plaintiff Smith, were likely to be (and actually were) misled by this misrepresentation. As noted above, there is no practical means for an individual consumer to verify a product's SPF prior to purchase, because verifying a product's SPF requires highly technical and expensive testing. Moreover, reliance on a manufacturer's SPF representations is standard practice by consumers.

91. Plaintiff Smith and California Subclass members suffered economic injury as a result of Defendant's misrepresentations that the Product provides SPF protection of 50. But for Defendant's false SPF claims, Plaintiff Smith and California Subclass members would not have paid as much as they did for the Product or would not have purchased the Product at all. Accordingly, Plaintiff Smith and California Subclass members were misled into paying a price for the Product that they would not have paid had Defendant truthfully and accurately represented the SPF protection provided by the Product.

92. As a result of Defendant's misrepresentations of the SPF protection provided by the Product, Plaintiff Smith and California Subclass members have been injured in the full amount of money they paid for the Product or at the very least in excess of what they would have paid for the Product had its actual SPF value been truthfully and accurately represented.

- 22 -

CLASS ACTION COMPLAINT

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
(By Plaintiff Smith, Individually and on Behalf of the
California Subclass, Against Defendant)

93. Plaintiff Smith repeats and incorporates paragraphs 1–60 as though fully set forth herein.

94. Plaintiff Smith brings this claim individually and on behalf of the members of the California Subclass against Defendant under California Commercial Code § 2313.

95. Defendant manufactured, labeled, and advertised and promoted the Product in its regular course of business.

96. Plaintiff Smith and the California Subclass members purchased the Product.

97. Defendant represented that the Product provides SPF protection of 50 to the public, including Plaintiff Smith and California Subclass members, on the labeling of the Product and in advertising and promotional materials for the Product.

98. Defendant intended its SPF 50 representations—which figure prominently on the Product's labeling and in advertising and promotional materials for the Product—to be relied upon by consumers like Plaintiff Smith and California Subclass members who would ultimately use the Product on themselves and their loved ones.

99. Plaintiff Smith reasonably relied on these representations, which formed the basis of his bargain, in purchasing the Product.

100. Defendant breached this express warranty in that the Product does not provide SPF protection of 50 (but rather provides SPF protection far lower than 50).

101. The SPF protection represented on the labels of the Product was false when the sales of the Product to Plaintiff Smith and California Subclass members took

- 23 -
CLASS ACTION COMPLAINT

place, and the falsity of these representations was undiscoverable by Plaintiff Smith and the California Subclass members at the time they made their purchases.

102. All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff Smith and the members of the California Subclass in terms of paying for the goods at issue.

103. Defendant also had actual or constructive notice of its false SPF representations on the labeling of the Product based upon its testing of the Product and its knowledge of the active ingredient (including by its quantity) comprising the Product.

104. Defendant's breach of express warranty has caused Plaintiff Smith and the members of the California Subclass to suffer injuries, pay for a falsely labeled Product, and enter into transactions that they would not have entered into at all or for the consideration paid. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff Smith and the California Subclass members have suffered damages and continue to suffer damages, including economic damages, in terms of the full price of the Product or, at the very least, the difference between the value of the product as promised and the value of the product as delivered.

105. As a result of Defendant's breach of an express warranty, Plaintiff Smith and the members of the California Subclass are entitled to legal and equitable relief, including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

- 24 -
CLASS ACTION COMPLAINT

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
(By Plaintiff Smith, Individually and on Behalf of the
California Subclass, Against Defendant)

106. Plaintiff Smith repeats and incorporates paragraphs 1–60 as though fully set forth herein.

107. Plaintiff Smith brings this claim individually and on behalf of the members of the California Subclass against Defendant under California Commercial Code § 2314 and the Song–Beverly Act (Cal. Civ. Code §§ 1790, *et seq*.).

108. Defendant is a "merchant" with respect to the goods at issue here—the Product, a sunscreen lotion.

109. By placing the Product into the stream of commerce, Defendant made—and breached—at least two implied warranties.

110. First, to be merchantable, a product must conform to any written representations on its labels. Because the true SPF protection provided by the Product does not, in fact, comport with the advertised SPF protection provided by the Product, Defendant has breached an implied warranty of merchantability.

111. Second, to be merchantable, the Product must be fit for its intended purpose as a consumer sunscreen lotion. Because consumer sunscreens containing materially less SPF protection than represented are generally considered dangerous and unsuitable, consumer sunscreen represented as providing SPF 50 protection is not fit for its intended purposes if such sunscreen actually provides far less than SPF 50 protection (such as SPF 17 protection in the case of the Product). Defendant breached an implied warranty of merchantability by manufacturing, labeling, advertising, and promoting a product that it represented as providing SPF 50 protection but, in reality, provides only SPF 17 protection.

CLASS ACTION COMPLAINT

112. Defendant's breach of these implied warranties has caused Plaintiff Smith and members of the California Subclass to suffer injuries, pay for a falsely labeled Product, and enter into transactions that they would not have entered into at all or for the consideration paid. As a direct and proximate result of Defendant's breach, Plaintiff Smith and members of the California Subclass have suffered damages and continue to suffer damages, including economic damages, in terms of the full price of the Product or, at the very least, the difference between the value of the product as promised and the value of the product as delivered.

**SIXTH CLAIM FOR RELIEF**
**Violation of Fla. Stat. § 501.201, *et seq.***
(By Plaintiff Fahey, Individually and on Behalf of the
Florida Subclass, Against Defendant)

113. Plaintiff Fahey repeats and incorporates paragraphs 1–60 as though fully set forth herein.

114. Plaintiff Fahey brings this claim individually and on behalf of the members of the Florida Subclass against Defendant under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA").

115. FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

116. FDUTPA is intended "[t]o protect the consumer public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id.* § 501.202.

117. Defendant's acts and practices, as alleged herein, were unfair, unconscionable, and deceptive under FDUTPA.

- 26 -
CLASS ACTION COMPLAINT

118. Defendant's conduct, as alleged herein, was "unfair or deceptive" because, as alleged herein, Defendant produced, manufactured, labeled, distributed, marketed, promoted, and advertised the Product to consumers throughout Florida as providing materially greater protection against the sun's harmful rays than it actually provides. In so doing, Defendant intentionally mislabeled and misbranded the Product, deceptively and falsely advertised the Product, misrepresented and omitted material facts regarding the Product, and otherwise engaged in activities that were substantially injurious to consumers in Florida.

119. Defendant intended that consumers, like Plaintiff Fahey and the Florida Subclass, rely upon its false, misleading, and deceptive representations that the Product provides SPF protection of 50, as stated on the labels of the Product and in advertising and promotional materials for the Product.

120. Defendant's misrepresentations that the Product provides SPF protection of 50 deceived and induced reasonable consumers and the public in Florida, including Plaintiff Fahey and the Florida Subclass members, into believing the Product has greater filtration, absorption, and reflection capabilities against ultraviolet radiation than other alternative products providing lower SPF protection than the Product was represented to provide, causing them to justifiably rely on such misrepresentations in deciding to purchase the Product.

121. Defendant's conduct, as alleged herein, has been and continues to be substantially injurious to consumers in Florida.

122. No benefit to consumers or competition results from the unfair and deceptive conduct alleged herein. Since consumers reasonably rely on Defendant's representations that the Product provides SPF 50 protection, consumers could not have reasonably avoided such injury.

- 27 -
CLASS ACTION COMPLAINT

123. Plaintiff Fahey and Florida Subclass members purchased the Product without knowledge that Defendant's representations that the Product provides "SPF 50" protection were false.

124. Plaintiff Fahey and the Florida Subclass either would not have purchased the Product at all or would not have paid nearly as much money for the Product had it been labeled, marketed, and advertised with accurate, truthful representations concerning the SPF protection that it provides.

125. By committing the acts alleged herein, Defendant engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA.

126. As a direct and proximate result of Defendant's breach, Plaintiff Fahey and members of the Florida Subclass have suffered damages and continue to suffer damages, including economic damages, in terms of the full price of the Product or, at the very least, the difference between the value of the product as promised and the value of the product as delivered.

### SEVENTH CLAIM FOR RELIEF
**Fraud**
(By Plaintiffs, Individually and on Behalf of the
California Subclass and Florida Subclass, Against Defendant)

127. Plaintiffs repeat and incorporate paragraphs 1–60 as though fully set forth herein.

128. Plaintiffs bring this claim individually and on behalf of the members of the California Subclass and the Florida Subclass against Defendant under California and Florida common law.

129. As alleged above, Defendant made false and misleading statements, and omitted material facts, in representing to Plaintiffs, the California Subclass members,

and the Florida Subclass members, that the SPF protection provided by the Product is 50.

130. The actual SPF protection provided by the Product that Plaintiffs, California Subclass members, and Florida Subclass members purchased was far less than the SPF protection that Defendant represented on the labeling of the Product and in materials used to advertise, promote, and market the Product.

131. Defendant also failed to disclose that the Product did not, in fact, provide SPF protection of 50.

132. Defendant knowingly and intentionally misrepresented the SPF protection provided by the Product for the purpose of increasing its revenues and maximizing its corporate profits.

133. Defendant made these misrepresentations and omissions with knowledge of their falsehood.

134. Defendant's misrepresentations and omissions concerning the SPF protection provided by the Product were intended to induce Plaintiffs, the California Subclass members, and the Florida Subclass members to purchase the Product.

135. And as Defendant intended, its misrepresentations and omissions concerning the SPF protection of the Product induced Plaintiffs, the California Subclass members, and the Florida Subclass members to purchase the Product. In purchasing the Product, Plaintiffs, the California Subclass members, and the Florida Subclass members reasonably and justifiably relied on Defendant's misrepresentations and omissions concerning the SPF protection provided by the Product.

136. Had Plaintiffs, the California Subclass members, and the Florida Subclass members known that the Product provided SPF protection materially lower than the SPF protection represented by Defendant on the Product's labeling, and in advertising

CLASS ACTION COMPLAINT

and promotional materials for the Product, they either would not have purchased the Product at all or would have paid significantly less for the Product than they did.

137. The fraudulent actions by Defendant, as alleged herein, caused substantial harm to Plaintiffs, the California Subclass members, and the Florida Subclass members, entitling them to monetary damages and other available legal and equitable remedies.

## EIGHTH CLAIM FOR RELIEF
### Negligent Misrepresentation
(By Plaintiffs, Individually and on Behalf of the
California Subclass and the Florida Subclass, Against Defendant)

138. Plaintiffs repeat and incorporate paragraphs 1–60 as though fully set forth herein.

139. Plaintiffs bring this claim individually and on behalf of the members of the California Subclass and the Florida Subclass against Defendant under California and Florida common law.

140. Defendant misrepresented a fact. It advertised that the Product provided SPF protection of 50, when in fact the SPF protection provided by the Product is materially lower.

141. There were no reasonable grounds for Defendant to believe that these misrepresentations were true. As an experienced sunscreen manufacturer responsible for testing the sunscreens that it labels, advertises, promotes, and markets, Defendant should have known that the Product did not in fact provide an SPF protection of 50.

142. This misrepresentation was material. Consumers purchase sunscreens to protect themselves and their loved ones from the dangerous effects of sun exposure. Accordingly, the degree of sun protection as advertised on the Product was a material—if not the sole—factor in Plaintiffs' decision to purchase the Product. And

CLASS ACTION COMPLAINT

this would be true of any reasonable consumer, including members of the California Subclass and the Florida Subclass.

143. Defendant intended that consumers, like Plaintiffs and the California Subclass members and the Florida Subclass members, rely on its representation that the Product provided SPF protection of 50, as stated on the labels of the Product and in advertising and promotional materials for the Product. As alleged herein, that representation was designed solely for consumers, like Plaintiffs, the California Subclass members, and the Florida Subclass members, who will ultimately purchase and use the Product on themselves and their loved ones.

144. Plaintiffs' reliance on Defendant's representation that the Product provided SPF protection of 50 was justifiable. Plaintiffs had no way of verifying this representation before purchase, and consumers generally rely on the SPF stated on the Product instead of paying the substantial costs to have the product tested by labs.

145. Plaintiffs were proximately damaged by Defendant's misrepresentations. Had Plaintiffs known that Defendant's representations that the Product provided SPF protection of 50 were false, Plaintiffs would not have paid as much as they did for the Product, or they would not have purchased the Product at all.

146. Further, Defendant was in a "special relationship" with Plaintiffs, the California Subclass members, and the Florida Subclass members, and thus owed them a duty of care because:

a) The SPF misrepresentations Defendant made on the Product's labels and in advertising and promotional materials for the Product were intended solely to affect the purchasing decisions of consumers, like Plaintiffs and the California Subclass members and the Florida Subclass members, who will ultimately base their decision on these SPF claims and who ultimately use the Product on themselves or their loved ones.

b) It was foreseeable that, by misrepresenting an SPF value as being higher than it is, and charging a premium for that added protection,

- 31 -
CLASS ACTION COMPLAINT

Defendant would economically harm consumers by misleading them into paying an unjustified premium for a sunscreen that lacked the advertised protection.

c) This harm was certain.

d) Defendant's decision to label and advertise, market, and promote the Product as providing SPF 50 protection was the close, proximate cause of Plaintiffs' and the California Subclass members' and the Florida Subclass members' deception and the fact that they were overcharged for this product.

e) Misrepresenting the SPF of a sunscreen is egregious and immoral for several reasons, the most obvious being that it leaves consumers vulnerable to sunburn and heightens their risk of skin cancer by misleading them into trusting inadequate sun protection from a lower quality sunscreen. Charging a steep premium for a sunscreen that does not actually protect people from the sun also immorally deprives these consumers of money that they could have spent on more useful, necessary items.

f) Holding sunscreen manufacturers accountable—to Plaintiffs, the California Subclass members, the Florida Subclass members, and other sunscreen consumers—for SPF misrepresentations would deter future misrepresentations, with no perceivable drawbacks.

147. Accordingly, Plaintiffs seek damages on behalf of themselves, the California Subclass members, and the Florida Subclass members in the full amount of the Product or, at the very least, the amount of the overcharges they paid for the Product.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant as follows:

- 32 -

CLASS ACTION COMPLAINT

A.     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent the Classes;

B.     For an order finding in favor of Plaintiffs and the Classes and against Defendant on all counts asserted herein;

C.     For actual, compensatory, and/or punitive damages in amounts to be determined by the Court and/or jury;

D.     For prejudgment interest on all amounts awarded;

E.     For an order of restitution and all other forms of equitable monetary relief;

F.     For injunctive relief as pleaded or as the Court may deem proper; and

G.     For an order awarding punitive damages, reasonable attorneys' fees, and costs to counsel for Plaintiffs and the Classes.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: August 29, 2025                    Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
fhedin@hedinllp.com

*Counsel for Plaintiffs and Putative Classes*

- 33 -
CLASS ACTION COMPLAINT