**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AGATHA LEWANDOWSKA GIANNESE; and ANDREA FAHEY, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>EDGEWELL PERSONAL CARE BRANDS, LLC,<br><br><br>    Defendant. | Case No.: 3:25-cv-01717-VAB<br><br><br><br><br><br>June 19, 2026 |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

**INTRODUCTION**

Plaintiffs' Opposition confirms that this case is about one thing only: compliance with FDA regulations regarding testing of sunscreen products for SPF values. Plaintiffs' theory of the case is that their single test result is "FDA-compliant" and that therefore, Defendant's testing must not be. That is the full sum and substance of this case, and it is roundly preempted. It is impliedly preempted under *Buckman* because it constitutes a naked attempt to privately enforce the FDCA. *See* Part I, *infra*. It is expressly preempted because FDA does not measure compliance with SPF value regulations via subsequent testing, and therefore Plaintiffs are seeking to impose a new and different regulatory regime of their own making. *See* Part II, *infra*.

Plaintiffs try (and fail) to wish away Defendants other arguments. They refuse to apply the Second Circuit's test for primary jurisdiction, which supports dismissal. *See* Part III *infra*. They deny that the Second Circuit's test for standing in product testing cases applies in this case, incorrectly asserting that the test only applies in contaminant cases. *See* Part IV, *infra*. The remaining state law claims fail for the reasons set forth in the Motion, which the Opposition fails to rebut. *See* Part V, *infra*. Defendant respectfully requests that the claims be dismissed.

**I.      Plaintiffs' Claims Are Impliedly Preempted under *Buckman*.**

Defendant's Motion explained that Plaintiffs' claims are impliedly preempted under *Buckman Co. v. Pls. Legal Comm.*, 531 U.S. 341 (2001) and that, since *Buckman*, courts have found claims impliedly preempted if an FDA regulation is "critical to [plaintiff's] case," or the claim "would not exist in the absence of the FDCA." Opp. at 13, 14 (citing, *e.g.*, *Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018) (claims were "wholly FDCA-dependent"); *McDaniel v. Upsher-Smith Lab'ys, Inc.*, 893 F.3d 941, 948 (6th Cir. 2018) (FDA regulation "critical to [plaintiff's] case"). As in these cases, Plaintiffs' claims are wholly dependent on the FDCA because they are premised on allegedly "FDA-compliant" testing. *See* FAC ¶¶ 24-26, 31 (Plaintiffs' "FDA-compliant" testing); *id.* ¶¶ 34-35 (Defendant's non-compliance with FDA requirements); Opp. at 17 ("monograph-compliant" testing).

The Motion *also* showed that claims are impliedly preempted under *Buckman* if the Court

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

must apply an FDA regulation to test the accuracy of the claim. Mot. at 14-15 (citing, *e.g.*, *In re Chantix (Varenicline) Mktg., Sales Practices & Products Liab. Litig. (No. II)*, 735 F. Supp. 3d 352, 381 (S.D.N.Y. 2024) (finding implied preemption based on "[plaintiff's] exclusive reliance on the FDA's standard"); *Bubak v. Golo, LLC*, 2025 WL 2860044, at *1 (9th Cir. Oct. 9, 2025)). These cases are on point as well, because the only way to evaluate the SPF value statement on the Product is by reference to FDA's regulations. FAC ¶¶ 24-26, 31-35; Opp. at 17.

In the Opposition, Plaintiffs make no effort to distinguish any of these cases. Instead, they assert that Defendant has "wager[ed] all its chips" on *Buckman*, which they argue is limited to cases about FDA's pre-market approval process. Opp. at 18. But, none of Defendant's cases involved FDA's pre-market approval process, and yet they all found implied preemption under *Buckman*. Mot. at 13-17. Plaintiffs rely on one unpublished case – *Dayan v. Swiss-Am. Prods., Inc.*, No. 15-CV-6895, 2017 WL 9485702, at *4 (E.D.N.Y. Jan. 3, 2017) – but in that case the court took the view that a challenge to an SPF value statement only "touch[es] on areas regulated by the FDCA" and assumed that the statement could "be verified without relying on any special expertise of the FDA." *Dayan*, 2017 WL 9485702, at 8; Opp at 19. Respectfully, as shown in the Motion, Plaintiffs' claims do far more than "touch on" FDA regulations; they are exclusively premised on FDA regulations, and cannot be adjudicated without applying FDA's complex testing regime. Mot. at 8-10 (FDA testing methodology). That is why Plaintiffs go to such lengths to allege and argue that their test result is "FDA-compliant." Opp. at 17; FAC ¶¶ 24-26. This leads to implied preemption, as Judge Meyer straightforwardly explained:

> "[A] plaintiff's claim that relies on the defendant's failure to comply with federal regulations is impliedly preempted. . . . Where, like here, a plaintiff's true purpose is to enforce federal regulations, masquerading as a state-law claim where the state has not adopted a parallel statutory scheme is not sufficient to escape preemption."

*Patane*, 314 F. Supp. 3d at 387 (internal quotations omitted); *see also In re Chantix*, 735 F. Supp. 3d at 380 (S.D.N.Y. 2024) (state law claim "impliedly preempted when 'the truth or falsity of the statements in question' can only be resolved by reference to FDA standards") (citation omitted); *Bubak*, 2025 WL 2860044, at *1 (state law claim impliedly preempted because it "necessarily

requires litigating 'the alleged underlying FDCA violation.'") (citation omitted).[1]

In this case, the SPF value statement on the Product is not made voluntarily; it exists because of an FDA requirement. Mot. at 8-10; RJN Ex. A (Admin. Order). FDA also dictates how the SPF value must be determined, and displayed. Mot. at 8-10; RJN Ex. A §§ M020.50 (Labeling), M020.80 (SPF testing). FDA has spent the past 50 years revising these requirements – a process that continues today. Mot. at 5-11. There are no state laws or standards regarding SPF values. *Id*. Plaintiffs' theory of the case is that Defendant did not comply with FDA's regulations, whereas their test result is "FDA-compliant." FAC ¶¶ 24-26 (asserting "FDA-compliant testing"); Opp. at 17 (same). Plaintiffs' "true goal" is to "privately enforce alleged violations of the FDCA," so the case is impliedly preempted. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997).

## II.    The Claims Are Expressly Preempted By 21 U.S.C. § 379r(a)(2).

Plaintiffs agree that, absent a showing that Defendant's SPF statements violate FDA regulations, there is no liability under state law. Opp. at 9 (arguing that state law claims made "in violation of the federal labeling standards" are not preempted). Yet Plaintiffs' evidence – a single, allegedly "FDA-compliant" test – does not establish, or provide evidence of, such a violation.

This is because FDA does not use testing as a method of enforcement of SPF value statements. There is no requirement of subsequent testing of a sunscreen unless there is a change to the formulation. Mot. at 18-19; *see also* FM, 64 Fed. Reg. 27666, at 27668. There is no compliance threshold, such as FDA has provided in other contexts in which it uses testing for compliance. Mot. at 19. FDA is aware of and has considered evidence showing that, because of subjectivity inherent in the testing methodology, SPF values will vary if the same sunscreen is tested in different labs. *See* RJN, Ex. E (ECF 42-5) at 77 (considering a study in which the mean SPF values for the same product ranged from 54 to 82, and mean SPF values of a product with an expected SPF of 100 ranged from 37 to 75); *see also id.* ("We note that variability in SPF values

---

[1] Plaintiffs' also rely on *Medtronic v. Lohr*, 518 U.S. 470 (1996). Opp. at 17, 18. But *Buckman* explained that "although *Medtronic* can be read to allow certain state-law causes of actions that parallel federal safety requirements, it does not and cannot stand for the proposition that any violation of the FDCA will support a state-law claim." 531 U.S. at 353.

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

is exacerbated at high SPFs."). Yet FDA's list of reasons why a test result can be considered invalid does not include subsequent test results. Mot. at 20-21 (citing Admin. Order § M020.80(e)(5)).

In other words, if the single test result commissioned by Plaintiffs' counsel was provided to FDA, there is no indication that FDA would consider it to mean that the SPF statement on the label of Defendant's Product was inaccurate. Because there is no showing that a single test result would constitute evidence of a violation of FDA regulations, it also would not constitute evidence of a violation of state laws asserted to enforce those same FDA regulations. Plaintiffs are therefore not merely applying FDA regulations; they are seeking to impose a new and different regulatory regime, under the auspices of state law. Mot. at 17 (citing 21 U.S.C. § 379r(a)(2)).

Realizing this, Plaintiffs argue that their test result is not submitted to show a violation, but to support the plausibility of their allegation that Defendant's testing did not yield an SPF 50 result. Opp. at 11. This is disingenuous. *See* FAC ¶ 26 (alleging that the actual SPF value is 20 "as revealed by the FDA-compliant testing commissioned by Plaintiffs' counsel."). And, it is incorrect, because, again, variability in SPF value testing is well established, and so Plaintiffs' test does not show that Defendant did not conduct testing or lied about its test results. Mot. at 20 n.6.

Plaintiffs rely on a series of unpublished cases – *Dayan v. Swiss-Am. Prods., Inc.*, No. 15-CV-6895 (DLI) (VMS), 2017 WL 9485702 (E.D.N.Y. Jan. 3, 2017)*; Carrol v. S.C. Johnsons & Son, Inc.*, No. 17-CV-05828, 2018 WL 1695421 (N.D. Ill. Mar. 29, 2018) – but those cases did not consider the argument that Defendant raises here, which is that FDA does not require retesting and would not consider a single test result as evidence of a violation, or to suggest that a manufacturer did not conduct its own testing.[2]

Lastly, as set out in the Motion, even if test results could show or provide evidence of a violation of FDA regulations, Plaintiffs' test results do not, because they are not actually "FDA-

---

[2] Plaintiffs assert that Edgewell is "[g]rasping at straws" (Opp. at 12) but ask the Court to consider "recently obtained" documents that supposedly "demonstrate[e] that . . . Defendant . . . used a laboratory called AMA Laboratories." Opp. at 13-14 (citing Pl.'s Ex. 1). But this document – not pleaded in the FAC; not offered for judicial notice; not signed by Defendant; not asserted by Defendant as substantiation, and not containing any actual test results – is a complete *non-sequitur* apparently submitted in an effort to associate Edgewell with AMA Laboratories. It has no bearing on this case or the Motion. It is Plaintiffs who are grasping at straws, and the Court should disregard this argument.

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

compliant." Mot. at 22-23. The Motion explained that Plaintiffs' test results were achieved by using an "expected SPF" of 20 for a Product labeled SPF 50 (Mot. at 23). Plaintiffs concede this, but argue that it "had no bearing on the outcome." That is incorrect (otherwise, why would FDA require the "expected SPF" to be used) – but the point is that Plaintiffs' admit that their test methodology, and therefore the requirement they seek to impose, is not "exactly the same" as that imposed by FDA. "On top of this, Plaintiffs fail to explain why their lab used a definition of MED that is different from FDA's. Mot. at 22. They argue that the MED definition is "synonymous" with what FDA requires (Opp. at 13) but a review of the "MED Scoring Scale" used in Plaintiffs' test result shows that it requires erythema to be "unambiguous" and to have defined borders "filling more than 50% of the exposure subsite." FAC, Ex. A, at 7. Both of these requirements are absent from the definition of MED in the FDA regulation, and both of them could cause a clinician to select a different MED. Plaintiffs simply pretend this difference does not exist. *Compare* Mot. at 22 (noting that italicized aspects of MED Scoring Scale do not appear in FDA regulations) with Opp. at 13 (quoting MED Scoring Score, but omitting discussion of these differences).

Plaintiffs suggest that these differences create an issue of fact (Opp. at 12) but there is no factual dispute. To avoid preemption, Plaintiffs must impose requirements "exactly the same" as those imposed by FDA. *Critcher v. L'Oréal USA*, Inc., 959 F.3d 31, 35-36 (2d Cir. 2020). The Motion identified two reasons why Plaintiffs testing methodology differs from what FDA requires. Mot. at 22-23. Plaintiffs' Opposition concedes one (expected SPF) and ignores the other (definition of MED). Plaintiffs' methodology, and thus the requirement they seek to impose via state law, is not "identical" to FDA's, and so the claims are expressly preempted. *See* 21 U.S.C. § 379r(a)(2).

## III.    The Court Should Dismiss the Case Under the Doctrine of Primary Jurisdiction.

Defendant's Motion summarized over fifty years of FDA work on standards for sunscreen products, including for SPF values on sunscreen labels. Mot. at 5-11. This work is ongoing, as shown by FDA's recent Proposed Administrative Order. *See* RJN, Ex. E (ECF 42-5). Against that backdrop, the Motion showed that the Second Circuit's four-factor test for primary jurisdiction is met in this case, because (1) the issues involve technical and policy considerations within FDA's

field of expertise, (2) the issues are particularly within FDA's discretion; (3) there is a danger of inconsistent rulings; and (4) FDA is continuing to regulate regarding the topic. Mot. at 24.

In response, Plaintiffs make no argument why these factors are not met in this case. Opp. at 20-22. Instead, they cite case law for the proposition that courts need not apply the primary jurisdiction doctrine if the claim is that a label statement is misleading, even where that statement pertains to a scientific or technical term or claim. Opp. at 21-22 (citing, e.g., *In re Edgewell Pers. Care Co. Litig.*, No. 16-CV-3371, 2018 WL 7858623, at *7 (E.D.N.Y. Sept. 4, 2018)).

But the facts are different here, and the *In re Edgewell* court would likely hold differently in this case. With respect to the first factor, as the *In re Edgewell* court noted, FDA is better positioned to determine whether the SPF value on the Product is accurate. *In re Edgewell*, 2018 WL 7858623, at *7 ("The court humbly recognizes that it is presumably less well-equipped than the FDA to determine as a matter of science whether the Products satisfy the requirements necessary to be labeled as SPF 50."). That court also found the second factor to weigh in favor of FDA. *Id*. at *8 ("the second *Ellis* factor weighs in favor of a dismissal"). As for the risk of inconsistent decisions, that risk is now heightened because Plaintiffs' counsel is filing similar cases against other sunscreen manufacturers in other courts (Mot. at 25 n.8), and is exacerbated by the fact that FDA provides no compliance threshold for SPF value testing. Mot. at 24. Lastly, FDA's consideration of applications regarding this issue is ongoing, as shown most recently by the Proposed Administrative Order, which post-dates *In re Edgewell*, and addresses the variability of SPF results obtained by different labs testing the same sunscreens. Mot. at 10 n. 4 (citing RJN, Ex. E, at 77). As a result, actually applying the four-part *Ellis* test to *this* case, rather than merely citing to older cases, shows that this case should be dismissed on primary jurisdiction grounds.[3]

## IV.   Plaintiffs Lack Article III Standing.

Under the test applicable in the Second Circuit, testing a single product does not show a reasonable likelihood that the products *Plaintiffs* bought (at different locations and times) were

---

[3] Nor would this leave Plaintiffs without a remedy. They can file a citizen petition to FDA, provide their test result, and ask FDA to modify the testing process, or move to *in vitro* testing, or impose a compliance threshold.

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

similarly flawed, and so Plaintiffs' have not alleged a concrete injury. Mot. at 25-26 (citing cases).

Yet again – Plaintiffs decline to engage with the test, and make no effort to "meaningfully link" their counsel's test result to their own purchases. Mot. at 26 (citing *Dunning v. Supergoop* ("*Dunning I*"), *LLC*, 2025 WL 34822, at *4 (S.D.N.Y. Jan. 6, 2025)). Instead, Plaintiffs argue that *Dunning I* and the other cases cited in the Motion "improperly applied a framework applicable to adulterated, contaminated product cases, even though the case before it was not that type of case." Opp. at 23-24. That argument does not hold water. The cases cited in the Motion (*Dunning I*, *Dunning II*, *Hicks*) apply the Second Circuit's analysis in *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732 (2d Cir. 2017) a case that involved alleged overstatements of the weights of food products, not contaminants. *Id.* at 734; *see Hicks*, 2024 WL 4252498, at *9 (explaining that *John* is "the leading case in this Circuit" on the topic). Plaintiffs also offer no reason *why* the test should apply only in the context of contaminants. The Second Circuit has a framework for considering when testing of one product supports an inference of the same flaw existing in the products plaintiffs purchased. Plaintiffs refuse to apply it. This is because they have not alleged facts that permit such an inference. Mot. at 25-28. The claims should be dismissed for lack of standing.[4]

## V.      The State Law Claims Fail.

### A.      The Unjust Enrichment Claims Must Be Dismissed.

The Parties agree that Connecticut applies the "most significant relationship" test to determine whether Connecticut unjust enrichment law applies. Mot. at 29; Opp. at 27 (both citing Restatement (2d) of Conflicts of Law § 221). Plaintiffs argue that there is no direct relationship between the parties, and so the factor "to be afforded the most weight" is where the benefit was received. Opp. at 27 (citing § 221 cmt. d).

Plaintiffs are wrong. That same comment continues and explains that, if the place where the benefit is received "bears little relation to the occurrence," it should be given "little or no

---

[4] Plaintiffs separately argue that they have standing because they allege that they paid a premium. Opp. at 24. But that argument fails. *See Dunning v. Supergoop, LLC*, No. 23 CIV. 11242 (JPC), 2026 WL 501627, at *4 (S.D.N.Y. Feb. 24, 2026) ("Though Plaintiffs' price-premium theory 'has been broadly accepted in the Second Circuit,' it still requires sufficient factual allegations to allow the inference that the [Purchased Products] in fact [were misbranded] . . . .").

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

weight in the choice-of-law process." *Id*. § 221, cmt. d. Instead, the "place where the act conferring the benefit or enrichment was done"—here, Illinois and Florida – should be given "[p]articular weight" if it differs from the place where the benefit was received. *Id*. Moreover, "[t]he fact . . that one of the parties . . . does business in a given state will usually carry little weight of itself."[5] *Id*.

In this case, the consumer transactions, the Plaintiffs' residences, the place where the benefit was conferred, and the alleged economic injury all occurred outside Connecticut. Mot. at 29-30. Considering the totality of the § 221 factors, Connecticut does not have the most significant relationship to the occurrence and the parties. The claim should be dismissed.

### B.    The Breach of Warranty Claims Must be Dismissed For Lack of Notice.

Plaintiffs concede that Illinois law requires notice of a claim for breach of warranty to be provided before filing suit, and also concede that they did not provide such notice in this case. Opp. at 28. They argue, however, that they are exempt from this requirement because Edgewell "already ha[d] actual knowledge of the defect of the particular product." *Id*. (citing cases).

But Plaintiffs fail to identify facts showing such knowledge. They cite FAC ¶¶ 30-36, but as the Motion explained, these are not facts regarding the "particular product" at issue; they are allegations of "generalized knowledge" that the Illinois Supreme Court has found insufficient. Mot. at 30 (citing *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 492-93 (Ill. 1996)).

Plaintiffs' case law actually supports dismissal. In *Kinman v. Kroger Co.* (Opp. at 28) the court dismissed the warranty claims for lack of notice, rejecting the argument that plaintiff "should have known about problems due to "complaints" as just an assertion of "general knowledge of a problem with the product line." 604 F. Supp. 3d 720, 726-27 (N.D. Ill. 2022). In *Powell v. Subaru of Am., Inc.* (Opp. at 28), the court described Illinois' notice requirement as "rather strict" and dismissed the warranty claim despite the assertion "that Defendants were aware of the general issues with the windshields." 502 F. Supp. 3d 856, 877, 881-82 (D.N.J. 2020). And, in *Fuchs v.*

---

[5] The case Plaintiffs reference, *Conn. Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, No. 3:19-CV-01324 (JCH), 2024 WL 2106837, at *15 (D. Conn. Mar. 1, 2024) involves very different facts, but notably applies the law of Florida even though Cigna is headquartered and incorporated in Connecticut. *Id*. at *15.

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

*Menard, Inc.* – the only case that found an exemption – the defendant admitted actual knowledge of the facts. 2017 WL 4339821, at *6 (N.D. Ill. Sept. 29, 2017) ("By its own admission, Menards knows that that lumber with the 4 x 4 label in its stores actually is 3 ½ inches by 3 ½ inches.").

Plaintiffs' last argument is that "this action has been pending for months," so Defendant is "on notice." Opp. at 28. But the issue is not whether Defendant is on notice. It is whether Plaintiffs met the pre-suit notice requirement. They did not, so "relief is foreclosed." Mot. at 30 (citing *Slafter v. Haier US Appliance Sols., Inc.*, 605 F. Supp. 3d 1102, 1108 (S.D. Ill. 2022)).[6]

### C.    The Claims Sounding in Fraud Must Be Dismissed.

Plaintiffs' claims sounding in fraud—including the fraud, ICFA, FDUTPA, and unjust enrichment claims – must be dismissed because there are no factual allegations supporting a strong inference of fraudulent intent. Mot. at 31 (citing *Herlth v. Merck & Co., Inc.*, 2022 WL 788669, at *7 (D. Conn. Mar. 15, 2022) and *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

Plaintiffs concede that Rule 9(b) applies to these claims, but argue that intent can be alleged generally. Opp. at 29. In the *Herlth* case, however, which Plaintiffs ignore, the court considered that argument before requiring facts showing a strong inference of fraudulent intent. 2022 WL 788669, at *7 (D. Conn. Mar. 15, 2022) ("conditions of a person's mind may be alleged generally" . . . but "[n]onetheless, the Second Circuit has made clear that plaintiffs in fraud cases must still allege facts that give rise to a strong inference of fraudulent intent.") (quoting *Lerner*, 459 F.3d at 290). Plaintiffs cite no case from within the Second Circuit suggesting otherwise. Opp. at 29-31.

Instead, Plaintiffs point to conclusory "knew or should have known" allegations. *Compare* Opp. at 30-31 *with* Mot. at 32 (explaining why such allegations fail). They argue that Edgewell acted to "increase[e] its revenues" (Opp. at 30, citing FAC ¶¶ 131) – a generic corporate motive that does not support an inference of fraudulent intent. Mot. at 31-32 (citing cases). Indeed,

---

[6] Plaintiff argues that courts "routinely" find that filing a complaint satisfies notice. Opp. 29 n.6 (citing cases). But none of those cases apply Illinois law. *See In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 155 F. Supp. 2d 1069, 1111 (S.D. Ind. 2001) (applying Michigan or Tennessee law); *Siqueiros v. Gen. Motors LLC*, 16-CV-07244 (EMC), 2021 WL 2115400, at *13 (N.D. Cal. May 25, 2021) (applying Pennsylvania law); *Martin v. Ford Co.*, 765 F. Supp. 2d 673, 683 (E.D. Pa. 2011) (applying Pennsylvania law and finding insufficient notice).

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

Plaintiffs admit that their allegations are made "in general terms." Opp. at 31. That does not suffice. Factual allegations supporting a strong inference of fraudulent intent are required, and absent here. The claims sounding in fraud should be dismissed.

### D.     The Fraud Claims Are Barred by the Economic Loss Rule.

The economic loss rule bars the fraud claims brought under Florida law.[7] Plaintiffs disagree, arguing that Florida's economic loss rule only applies in product liability cases. Opp. at 32 (citing *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1338 (S.D. Fla. 2016)).

Plaintiffs are wrong. Multiple district courts, including the *In re Takata* court, have found that Florida's economic loss rule applies in cases of fraud, even outside the context of products liability. Mot. at 34 (citing cases); *see also In re Takata*, 193 F. Supp. 3d at 1338 (noting that "the fraudulent inducement and negligent misrepresentation cases to which the [Florida Supreme Court] cited were outside of the products liability context.") (citation omitted).

*Thompson v. Procter & Gamble Co.*, for example, applied the economic loss rule to bar a claim brought under Florida law that alleged that Ivory Soap was falsely advertised as "mild" and noted that "while Plaintiffs claim that this is not a 'products liability' case, that argument is unavailing." No. 18-CV-60107, 2018 WL 5113052, at *3 (S.D. Fla. Oct. 19, 2018). *Tyman v. Pfizer, Inc.*, No. 16-CV-6941, 2017 WL 6988936, at *18 (S.D.N.Y. Dec. 27, 2017) likewise found Florida law allegations that ChapStick was falsely advertised as "natural" barred by the economic loss rule. *See also W.W. Sports Importadora Exportadora e Comercial Ltda v. BPI Sports, LLC*, No. 0:16-CV-60147, 2016 WL 9375202, at *4 (S.D. Fla. Aug. 11, 2016) (economic loss rule bars claim that content of "Prime Beef" product was misrepresented). Florida's economic loss rule is not limited in the way that Plaintiffs assert, and bars Plaintiff Fahey's fraud claim. Mot. at 34.

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Motion to Dismiss be granted and that the First Amended Complaint be dismissed with prejudice.

---

[7] Defendant's Motion explained that, under Illinois law, the *Moorman* doctrine *bars Plaintiff Giannese's negligent misrepresentation claim.* Plaintiffs have dropped the negligent misrepresentation claim. Opp. at 25 n.5.

Dated: June 19, 2026

Respectfully submitted,

HOGAN LOVELLS US LLP

*/s/ Trenton H. Norris (pro hac vice)*
Trenton H. Norris (Bar No. 209235)
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: (415) 374-2300
trent.norris@hoganlovells.com

George Langendorf (Bar No. 209236)
(*pro hac vice*)
125 High Street, Suite 2010
Boston, MA 01944
Telephone: (617) 371-1000
george.langendorf@hoganlovells.com

Lauren R. Greenspoon (ct04846)
James D. Geisler (ct31447)
SHOOK, HARDY & BACON, L.L.P.
185 Asylum Street
City Place 1, Suite 3701
Hartford, CT 06103
Tel. No: (860) 515-8901
Fax No.: (860) 515-8911
lgreenspoon@shb.com
jgeisler@shb.com

James Patrick Muehlberger (51346) (*pro hac vice*)
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Tel. No. 816-474-6550
Fax No. : 816-421-5547
jmuehlberger@shb.com

Patrick L. Oot (ct31556)
SHOOK, HARDY & BACON, L.L.P.
1800 K Street NW
Suite 1000
Washington, DC 20006
Tel. No.: 202-783-8400

11
Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

Fax No.: 202-783-4211
oot@shb.com

*Attorneys for Defendant*
*EDGEWELL PERSONAL CARE BRANDS, LLC*

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Trenton H. Norris (pro hac vice)*
Trenton H. Norris (Bar No. 209235)

*Attorneys for Defendant*
*EDGEWELL PERSONAL CARE BRANDS, LLC*

Defendant's Reply in Support of Motion to Dismiss the Amended Complaint